Arkansas Midland Railway v. Canman.

## ARKANSAS MIDLAND RAILWAY v. CANMAN.

1. INSTRUCTIONS: *In civil cases.*

In charging the jury in civil cases the word " satisfy" should not be used in an instruction, in such connection that it may be taken to mean that a verdict cannot be given on a preponderance of the evidence.        .

2. RAILROAD COMPANIES: *Negligence: Instructions.*

In an action against a railway company for injuries to a passenger caused by the derailment of a car, the court instructed the jury that if they found " there was a spread or bent rail at the the time and place of derailment," they might " infer negligence from that fact," and that the burden of disproving it was on the defendant.    HELD: That the instruction was erroneous, as it assumed that any spread or bend in a rail is negligence, without regard to its sufficiency to cause the derailment of a car, or otherwise impair the safety of a train.

3. SAME: *Care required for safety of passengers.*

Railway companies are required to provide for the safety of passengers all such things as are reasonably consistent with their business and appropriate to the means of conveyance they employ, but they are not required in order to make their roads perfectly safe to incur such expenses as would render the business of carrying passengers wholly impracticable.

SAME: SAME: *Separate trains for passengers.*

It is not the duty of a railway company to run separate passenger trains where its business is not sufficient to warrant it in doing so.    But if the business of the company is sufficiently large and profitable to warrant such trains, and the safety of passengers is endangered by having the passenger coaches mixed in the same train with freight cars, then it is the duty of the company to run separate trains.

5. SAME: SAME.

Where it is not the duty of a railway company to run separate passenger trains, the statute [*Mansf. Dig., sec. 5477*] requires it, in forming mixed trains, to place the baggage and freight cars in front of the passenger coaches; and if the use of bell-pulls and air-brakes on trains thus formed is impracticable, the law will not require it.    But if the use of such appliances on mixed trains is practicable, and is necessary to the safety of passengers, then the law will demand it.

6. VERDICTS: *Special finding of facts.*

Secs. 5142, 5143 Mansf. Dig. provide that the court may require the jury " in any case in which they render a general verdict, to find specially upon particular questions of fact to be stated in writing," and that when the special finding of facts is inconsistent with the general verdict the former controls the latter, and the court may give judgment accordingly.    HELD: That where such special

finding is required, if the general verdict is sustained by any one of two or more interpretations of the evidence, it cannot be impeached by showing that part of the jury proceeded upon one interpretation and part upon others. But if the jury must necessarily agree upon the answer to a particular question before they can find a verdict, and their reply to such question is that they cannot agree, then the reply and the verdict being irreconcilably in conflict, the latter ought not to be received.

APPEAL from *Phillips* Circuit Court.

M. T. SANDERS, Judge.

*John J. and E. C. Hornor*, for appellant.

1. *Prima facie*, where a passenger is injured without fault of his own, there is a legal presumption of negligence, which the railway company must rebut. *34 Ark., 613.*

The testimony shows beyond question that the appellant was guilty of no negligence. The road was properly and skilfully constructed and maintained; there was no defect in the machinery of the train; no negligence in the method of operating the road; the train was sufficiently and properly officered by competent men; all was done that could have been done. The accident was simply an inevitable casualty against which human skill and prudence could not provide. The presumption of negligence was rebutted, and appellee must make out his case by a preponderance of testimony. *23 A. & E. R. Cas., 492; 28 id., 170.*

2. The preponderance of the testimony is that there was no bent rail; no loose spikes at the point of derailment; and that gravel ballast would not have added to the safety of the passengers if it had been practicable to have ballasted this road with gravel.

3. A failure to provide bell-cord and air-brakes was not negligence. This was a mixed train, and its speed only eight miles an hour. Under these circumstances, even were it practicable to use air-brakes and bell-cord, their absence was not negligence. *Whittaker-Smith Neg. p. 1; Patterson R. Ac. Law, 244; ib., 279; 93 U. S., 291;* nor would their use have contributed in any way to prevent the injury. *95 U. S., 130.*

Arkansas Midland Railway v. Canman.

Having exercised the highest degree of prudence and skill which human foresight could effect, the railroad was not liable. *44 N. Y., 478; 55 Ill., 194; 48 Iowa, 236; 24 A. & E. R. Cases, 405.*

4. The first instruction is erroneous. The rule of law only requires the defendant to *rebut* the presumption by a *preponderance of testimony*, not to *satisfy* the jury. It is only in criminal cases that the jury must be *satisfied*, etc.

5. The second instruction is erroneous in assuming that *any* spread or bend in a rail is negligence; and then in casting the burden on defendant of *"disproving"* it.

6. Review the other instructions and contend they were erroneous and misleading.

7. The court erred in refusing instructions 6, 7, 8 and 9 asked by defendant. The utmost degree of diligence *which human skill and foresight can effect* means the *utmost care and diligence for very cautious persons under like circumstances and conditions.* The law only requires that all companies must provide a safe track and sound machinery and cars, and capable and trustworthy operatives, but they are not required to use every appliance or machine that may be found valuable in diminishing the danger in railroad travel and which may come into general use on the great trunk lines, or lines connecting great cities, or carrying thousands of passengers, etc. Such a rule would bankrupt many railroads. *1 A. & E. R. Cases, 79; 48 N. H., 316; 93 U. S., 297; 28 A. & E. R. Cases, 170; 23 id., 492; 99 Ind., 551; 37 A. & E. R. Cases, 137.*

A railroad is bound to exercise the highest degree of care and diligence which is reasonably consistent with the practical operation of its railroad and the conducting of its business. *34 A. & E. R. Cases 405; 26 id., 229; Story Bailments, sec. 601; 28 A. & E. Cases, 167; 3 id., 343; Patt. R. Ac. Law, sec. 247.*

8. It was error to instruct the jury that if they found negligence on the part of defendant and could not agree what

the particular negligence was, they might so state. *21 Kans.,
484; 2 Thomps. Trials, sec. 2670; 12 Pac. Rep., 103 ; 15 Pac.
Rep., 499; 17 id., 791; 38 N. W. Rep., 132.*

9. The answers to the special interrogatories were incon-
sistent with the general verdict, and the general verdict should
have been set aside. *40 Ark., 298.*

10. The verdict was excessive, and instead of allowing a
remittitur, the court should have awarded a new trial. *15
Pac. Rep., 499; 3 Bush., 81 ; 7 S. W. Rep., 492 ; 38 N. Y., 178.*

*E. W. Kimball* and *Stephenson & Trieber*, for appellee.

1. The instructions for appellee are copied from in-
structions approved by this court. *34 Ark., 613; 40 id., 298;
37 id., 519 ; 51 id., 459.* And as to the measure of damages,
see *48 Ark., 396.*

2. Instructions 6 to 9 asked by appellant, were properly
refused. They seek to change the rule by substituting "prac-
ticability" for " the highest skill and utmost diligence." The
rule laid down in *34 Ark., 614,* has been approved in every
case since. *36 Ark., 451 ; 40 id., 298 ; 51 id., 459; 10 S. W.
Rep., 741.* See, also, *117 Ind., 435.*

Railroads are responsible for the slightest negligence. *40
Ark., 298; 14 How., U. S., 486.*

The 8th instruction asked by appellant, that this was a
mixed train, and for that reason the company was not bound to
exercise the same diligence as would have been required of it,
had it been a passenger train only, is against the great pre-
ponderance of authority. *58 Me., 187; 33 Wisc., 4 ; 93 U. S.,
291; Thompson Car., 328; 26 Ill., 373; 30 Ill., 9; 51 Ark., 459;
39 N. Y., 227; 23 A. & E. Cases, 498; 104 Ind., 264.*

3. The burden of proving negligence is not shifted back
upon plaintiff by the introduction of testimony in rebuttal.
*51 Ark., 459; 16 Kans., 200.* But the legal presumption of
negligence in this case, was reinforced by direct testimony,
that the track spread.

4. Conceding that appellant had a right to have the special interrogatories answered, yet having failed to object to the reception of the verdict at the time, it waived this right. *12 Pac. Rep., 512 ; 30 Ind., 103 ; 110 id., 225 ; 15 N. E. Rep., 227 ; 99 Ind., 551 ; 19 Abb. Pr., 314 ; 21 Mo. App., 618; 42 N. W. Rep., 632; Thomps. on Trials, sec. 2685.*

But it is not necessary that a jury must agree in every case on all the special interrogatories, before its general verdict can be received. It is within the discretion of the court whether a jury will be required to answer any special interrogatories. *Mansf. Dig., sec. 5142.* The entire matter is within the control of the court. Its acceptance of the general verdict was a tacit withdrawal of the special interrogatories. *25 Kans., 236; 19 Abb. Pr., 314.*

See, also, *Thompson on Trials, sec. 2688; 16 Kans., 200; 22 N. E. Rep., 14; 50 Ark., 314; 52 Ind., 505.*

If special findings can, upon any hypothesis, be reconciled with the general verdict, the general verdict will be upheld. *42 Ind., 157; 59 id., 542; 22 N. E. Rep., 14.* The conflict must be irreconcilable. *35 Iowa, 107; 39 Ind., 521; 107 Ind., 485; 113 id., 460; 27 Cal., 360; 12 Pac. Rep., 103; 15 id., 490 ; 17 id., 791; 38 N. W. Rep., 132; 4 George (Miss.), 47.*

5. The verdict is not excessive. If it was, the remittitur cured that. *39 Ark., 491; 55 Wisc., 121; 62 id., 137; Doyle v. Dickson, 97 Mass.*

BATTLE, J. The Arkansas Midland Railroad Company is a corporation owning and operating a railroad between Helena and Clarendon, in this State, for the carriage of passengers and freight to and from its termini and intervening points. It has never run trains, exclusively, for transporting passengers, but the trains on which it has carried them were composed of passengers and freight cars, and carried freight. On the 12th of January, 1888, for a valuable consideration, it undertook to carry O. G. Canman, as a passenger, on a train composed of

two box cars, a baggage car and two passenger coaches, from Helena to Clarendon. The box and baggage cars were placed in front of the coaches. The train was not provided with air-brakes nor with bell pulls, but was furnished with hand-brakes and two brakemen. Canman took a seat in one of the coaches. The train moved out and was running at the rate of about eight miles an hour, and had gone a short distance when the coach in which Canman was seated left the track, turned over, and severely injured him. For the damages he suffered in consequence of the injuries received he brought this action, and alleged that they were caused by the negligence of the railroad company.

The foregoing facts were proven in the trial. It was also proved that the road-bed of the defendant was ballasted with dirt, and evidence was adduced tending to prove, that it was impracticable to use a bell-rope and air-brakes on a train composed of freight and passenger cars; that the coach that was overturned was derailed at a point where the rail in the track, on the east side, was slightly bent out of line, and "a spike seemed to be pushed towards the east;" and that in leaving the track the wheels on the east side of the coach went between the rails, and the others, on the outside and west of the track.

Among other instructions the court gave the following, over the objections of the defendant, to the jury:

"I. Where a passenger for hire being carried on the train of a railroad company, is injured without fault of his own, the law presumes that the railroad company has been guilty of negligence, which presumption the railroad must remove by evidence, and if the jury find that plaintiff, while a passenger as aforesaid on defendant's train, was injured without any fault of his own, and the defendant has failed to *satisfy* you by the evidence introduced, that it was not through its fault that the accident occurred, or that it was caused by plaintiff's own or contributory negligence, the verdict must be for the plaintiff.

" 2. If the jury find from the evidence that there was a spread or bent rail at the time and place of derailment, the jury may infer negligence from that fact, and the burden of disproving it is on the defendant."

The defendant asked and the court refused to give the following instructions : " If the jury find from the testimony that the train on which plaintiff was a passenger at the time he was injured was a mixed train for carrying passengers and freight, and that such train at the time when such injury was received, was not provided with air-brakes or a bell-cord, and if they further find from the testimony that it is not practicable to use air-brakes and bell-cord on such trains, then the jury are instructed that the want of such appliances was not negligence in defendant."

The defendant asked for further instructions as to the degree of diligence, care, skill and prudence it was bound to exercise in the construction, maintenance and operation of its railroad, which the court refused to give.

The result of the trial was a verdict and judgment in favor of plaintiff, and an appeal by the defendant to this court.

The first instruction, construed in connection with other instructions given, contained no error. More appropriate words, however, and words adapted to express the idea intended, should have been used instead of the word "satisfy." In order to overcome the presumption of negligence it was not necessary for the defendant to introduce evidence sufficient to convince the jury, beyond a reasonable doubt, that it had not been negligent. " It is never necessary," says the court in *Shinn v. Tucker, 37 Ark., 589,* "in a civil case that a jury should be satisfied of the truth of their verdict, in the sense of resting upon it, confidently. That principle belongs to criminal law. Civil verdicts should be given on preponderance alone, for the party whose evidence, considered altogether, outweighs that of the other as to the facts in issue; or, against

1. INSTRUCTIONS: In civil cases.

the one having the onus, if, on the whole, the weight seems balanced."

**2. RAIL-ROAD COMPANIES: Negligence: Instructions.** The second instruction given was erroneous. It assumes that any spread or bend in a rail is negligence, without regard to its sufficiency to cause the derailment of a car, or in some way or manner impair the safety of the train. It is true that the court instructed the jury, that, if they found that the accident to the train was occasioned by a defect in the road-bed or track, and " that defendant had taken all the means which would have been taken by a cautious and prudent person in the exercise of the utmost prudence to prepare and maintain its road-bed and track where the car was derailed," the defendant would not be liable ; but, at the same time, it told the jury, in effect, that, if they found that there was a spread or bent rail at the time and place of derailment, they might infer that the defendant had not used such means and prudence, and was guilty of negligence.

**3. SAME: Care required for safety of passengers.** Railroad companies " are bound to the most exact care and diligence, not only in the management of trains and cars, but also in the structure and care of the track, and in all the subsidiary arrangements necessary to the safety of the passengers." While the law demands the utmost care for the safety of the passenger it does not require railroad companies to exercise all the care, skill and diligence of which the human mind can conceive, nor such as will free the transportation of passengers from all possible peril. They are not required, for the purpose of making their roads perfectly safe, to incur such expenses as would make their business wholly impracticable, and drive prudent men from it. They are, however, independently of their pecuniary ability to do so, required to provide all things necessary to the security of the passenger reasonably consistent with their business " and appropriate to the means of conveyance employed by them," and to adopt the highest degree of practicable care, diligence and skill that is consistent with the operating of their roads, and that will not

render their use impracticable or inefficient for the intended purposes of the same. *Philadelphia & C. R. R. Co. v. Derby, 14 How., 486; Simmonds v. New Bedford & Steamboat Co., 97 Mass., 361; P. C. & St. L. R. R. v. Thompson, 56 Ill , 138; Pershing v. Chicago & R. R. Co., 34 Am. & Eng. R. R. Cases, 405; 2 Wood's Railway Law, sec. 301, pp. 1074, 1079,* and cases cited ; *Hutchinson on Carriers, secs. 502, 529,* and cases cited ; *Patterson on Railway Accident Law, sec. 247.*

In *Indianapolis & St. Louis Railroad Company v. Horst, 93 U. S., 291,* which was an action against a railroad company for injuries received by the plaintiff while riding on a cattle train, the court, after saying, " the highest degree of carefulness and diligence is expressly exacted " of railway companies, said : " The terms in question do not mean all the care and diligence the human mind can conceive of, nor such as will render the transportation free from all possible peril, nor such as would drive the carrier from his business. It does not, for instance, require in respect to either passenger or freight trains, steel rails and iron or granite cross-ties because such ties are less liable to decay and hence safer than those of wood ; nor upon freight trains air-brakes, bell-pulls and a brakemen upon every car ; but it does emphatically require everything necessary to the security of the passenger upon either, and reasonably consistent with the business of the carrier, and the means of conveyance employed."

Was appellant required to run separate passenger trains on its road? All carriers are not required to adopt a like expensive provision for the safety of passengers. The business of a road might render it unsafe to use a single track, and necessary to the safety of the passengers to use a double one. It would, unquestionably, be safer for all railroads to have two tracks and run all trains going in the same direction over the same track, but this does not make it the duty of all railroads to have double tracks. The provisions required to be adopted by passenger carriers for the safety of their passengers vary as

4   Same: Same : Separate passenger trains.

the exigencies of the traffic and its remunerative character demand and justify.   A railway constructed through a thinly settled country, moving but little freight and few passengers, and running its trains at a slow rate of speed, cannot be expected to be equipped and operated in the same manner as is necessary in the case of a railway running through a densely populated territory, and moving a large volume of traffic.   So the line of a railroad may be short and the business done by it so small as to make it unreasonable to require it to run separate trains for freight and passengers.   If the business done does not warrant it, it would be unreasonable and oppressive to demand it, and it would not be required.   But on the other hand, if the business was sufficiently large and profitable to warrant it, and the safety of the passengers was endangered or diminished by having the passenger coaches mixed in the same train with freight cars, it would clearly be the duty of the railway company to run separate trains.

5. SAME: Same.   If it was not the duty of appellant to run separate passenger trains, then, under the statutes of this State, it was its duty, in forming trains, to place the baggage and freight cars in front of the passenger coaches.   (*Mansf. Dig., sec. 5477.*)   Under such circumstances the law would not require bell-pulls and air-brakes to be used on such trains if it was impracticable to do so.   But, on the other hand, if the rule as to care and diligence already laid down required them to be used, it was the duty of the appellant to have done so.

6. VER-
DICTS:
Special
finding of
facts.   Another question is presented for our consideration.   The statutes of this State provide that the court may require the jury "in any case in which they render a general verdict, to find specially upon particular questions of facts to be stated in writing," and that "when the special findings of facts is inconsistent with the general verdict the former controls the latter, and the court may give judgment accordingly."   (*Mansf. Dig., secs. 5142, 5143.*)   In pursuance of these statutes the court

propounded interrogatories and gave instructions to the jury, on motion of the appellant, as follows:

" 1. Was the derailment of the coach in which plaintiff was a passenger caused by the insufficient skill and care of the defendant in constructing its road-bed?

" 2. Was the derailment of the coach in which plaintiff was a passenger caused by the want of skill and prudence of defendant in maintaining its road-bed?

" 3. Was such derailment caused by the defect in the rolling stock in the defendant's train or any of its appliances?

"4. Was such derailment caused by any negligence in operating such train?

" 5. If the jury find negligence in either case they will state in what said negligence consisted.

"6. If the jury find that after the derailment of the car the track was torn up and the ties broken, they will state whether the tearing up of the track and the breaking of the ties contributed to the injury of the plaintiff, and if so, in what way and to what extent."

And against the objection of the defendant, instructed the jury as follows:

"If the jury find negligence and cannot agree what the particular negligence was which caused the derailment of the car, they may so state."

" If the jury find that the derailment was caused by a bent rail or spreading of the track, say so."

To each of the interrogatories the jury responded : "We fail to agree," and further said : " We find negligence on the part of the defendant, but fail to agree as to what particular neglect caused the derailment of the train."

The appellant contends that the court erred in instructing the jury that if they found that the appellant had been guilty of negligence, and could not agree as to what the negligence which caused the derailment was, they might so state; and insists, that before a verdict could have been legally re-

turned against it, there must have been an agreement of the minds of the twelve jurors as to the existence of some particular fact constituting negligence, and that they must have agreed on an affirmative answer to one of the interrogatories. The correctness of this contention depends on the evidence. It is not necessary that a jury, in order to find a verdict, should, in all cases, concur in a single view of a transaction or occurrence disclosed by the evidence. If the verdict is sustained by any one of two or more interpretations of the evidence, it cannot be impeached by showing that a part of the jury proceeded upon one interpretation and a part upon the others. *Murray v. New York Life Ins. Co., 96 N. Y., 614; Chicago & N. W. Ry. Co. v. Dunleavy, 22 N. E. Rep., 15.* But if they must necessarily agree upon the answer to any particular question before they can find a verdict, they would be guilty of a violation of duty if they returned a general verdict without doing so. *Ebersole v. Northern Central Railroad Co., 23 Hun., 114.* If they should reply to such a question, to the effect they cannot agree, the court ought not to receive their verdict, as the reply and verdict, in that case, would be in irreconcilable conflict. As to the consistency of the verdict, and the answers of the jury to the interrogatories in this case, we express no opinion.

Reversed.