McMurray *v.* Boyd.

Opinion delivered February 24, 1894.

1. *Master and servant.—Discharge for misconduct.*

Where a bookkeeper, employed for a stated period, so demeans himself toward the customers of his employers as to injure their business, his misconduct is a sufficient reason for his discharge.

2. *Pleading—Amendment.*

Defendant should be permitted to amend his answer to conform to evidence which has been admitted without objection if there is nothing to indicate that plaintiff would be surprised or his cause injuriously affected by it.

3. *Master and servant—Breach of contract—Condonation.*

Retention of a servant by the master after knowledge of a breach of the contract is, *prima facie*, a waiver; but if there are circumstances shown that tend to establish a reasonable or proper excuse for delay in dismissing him, it is for the jury to say whether in fact the breach has been condoned.

Appeal from Sebastian Circuit Court, Fort Smith District.

Edgar E. Bryant, Judge.

*Sandels & Hill* for appellants.

1. The court erred in not giving judgment on the special verdict. The two verdicts being inconsistent, the special verdict controls, and displaces the general verdict. 40 Ark. 327.

2. Appellants were clearly entitled to amend their answer. 42 Ark. 57; *Ib.* 503.

3. The mere fact of retaining Boyd after his incompetency was discovered does not estop appellants from discharging him. The question whether the breach was waived or not should have been left to the jury. 3 So. Rep. 893; 17 Pac. 292; 7 Fed. Rep. 642; Wood on Master and Servant, (2d ed.) sec. 123; 33 N. Y. Sup. Ct. 195; 63 Ga. 755; 64 Ga. 737; 3 Rich.

(S. C.) 161; 21 S. W. Rep. 430; Wood, Mast. and Serv. pp. 168–170, and sec. 121.

*T. P. Winchester* for appellee.

1. The general verdict is entirely consistent with the special findings under the instructions of the court.

2. It was within the court's discretion to allow the amendment asked.

3. There was no error in the court's instructions. What is a *waiver*, is a question of law, and the court left it to the jury to find whether the necessary facts existed. Wood, Master and Servant, sec. 121; 3 So. Rep. 893.

MANSFIELD, J. The appellants employed the appellee, Boyd, to serve as their book-keeper for the period of one year at a salary of $50 per month. They discharged him at the end of four months, and, after the term of service contracted for had expired, he brought this action to recover the amount of his salary for the eight months following the date of his dismissal. The answer to the complaint justified his discharge on the ground that he kept the books in a careless, unskillful and incompetent manner; and this defense was supported on the trial by the testimony of several witnesses. Evidence which tended to show that the plaintiff was rude and discourteous to the defendant's customers, and that his conduct in that respect injured their business, was also given to the jury without objection; and when all the evidence had been concluded, they asked leave to amend the answer so as to set up, as an additional defense, the facts just mentioned—their counsel stating that such defense was unknown to them before it was disclosed by the evidence. But the court refused to permit the amendment, and confined its charge to the facts originally relied upon.

1. Right of master to discharge servant.

If the plaintiff so demeaned himself towards the customers of the defendants as to injure their business, this was a sufficient reason for his discharge ; and whether it was, or was not, in fact, one of the grounds on which the defendants acted in dismissing him, they had the right to avail themselves of it as a matter of defense to his action. Wood's Master and Servant, pp. 166, 167, 210, 211, 232.

2. As to amendment of pleading.

And as the proposed amendment was based on evidence not objected to, and there is nothing to indicate that the plaintiff would have been surprised, or his cause otherwise unjustly affected by it, we think the court should have allowed it. Mansf. Dig. secs. 5075, 5080 ; *Burke* v. *Snell*, 42 Ark. 57.

3. When servant's breach of contract condoned by master.

The plaintiff entered the service of defendants about the first of September, 1889, and was discharged about the first of January, 1890. The busy season of the defendant's trade opened, it seems, the middle of November ; and Reynolds, one of the defendants, testified that he was pleased with the plaintiff's work up to the latter date, and then discovered he was incompetent. Reynolds also states that he complained to McMurray of the plaintiff's incompetency, and that, during the month of December, McMurray began to look for another bookkeeper ; and it was shown that, soon after the dismissal of the plaintiff, a person was employed to take his place at a salary of seventy-five dollars per month. McMurray, who acted for his firm both in employing and dismissing the plaintiff, testified that members of the firm complained to him of the plaintiff's incompetency and offensive manner towards customers, and that he discharged him on these grounds, but did not at any time inform him of the complaints made. McMurray admitted that, two months after the plaintiff's work began, he expressed his satisfaction with it, and also admitted that he knew the plaintiff was incompetent a month before he was discharged. He stated, however, that his

reason for delaying the dismissal was that it would have injured his business if it had occurred during the busy season, when, to use his own language, "all good book-keepers had places."

As applicable to this testimony, and to other evidence bearing on the question whether the defendants had waived their right to discharge the plaintiff for the cause alleged in the answer, the following instruction was given to the jury, the same being the second paragraph of the court's charge : "If you find that the defendants, during the busy season, found out that the plaintiff was not keeping the books in the manner contemplated by the employment, but said nothing to the plaintiff about it, and did not rescind the contract after finding out such facts, but retained and accepted plaintiff's services, such as they were, under the contract, without any objection in any way made thereto, until after the busy season was over and they could dispense with his services, and then discharged him, then, and in such case, the defendants are estopped to allege the manner of keeping the books as grounds of discharge ; for, after defendants had become aware of plaintiff's manner of book-keeping, they should have rescinded the contract, or at least stated their objections to Boyd, so that he might have corrected it; and if they accepted his services, without objection, until they had no further need of Boyd's services, they waived their right to discharge him."

We may judge of the correctness of this instruction by considering whether it is consistent with the law as stated by Mr. Wood in his work on Master and Servant. On this subject he says : "The question as to whether the master has waived a breach of contract by the servant by retaining him in service after knowledge of such breach is a question of fact for the jury. *Prima facie*, it is a waiver, and condonation is presumed; but, if there

are circumstances shown that tend to establish a reasonable or proper excuse for delay, it is for the jury to say whether *in fact* the breach was condoned." (Wood's Master and Servant, sec. 123.)

Under this rule, the main fact to be found by the jury was whether the plaintiff's alleged breach of the contract had been condoned. If that fact was shown, its legal effect was a waiver of the right to discharge the plaintiff. But what the rule of law makes only *prima facie* evidence of condonation the instruction makes conclusive by declaring that the defendants were estopped to allege the plaintiff's incompetency as cause for dismissing him, if the jury found that, after discovering his manner of keeping the books, they retained him, without objection, until the close of the busy season, when they could dispense with his services. From his retention after knowledge of his incompetency, the law presumes a waiver of the breach; but this presumption may be rebutted by facts sufficient to show a reasonable excuse for the failure to dismiss him at an earlier day. (*Jones* v. *Vestry*, 19 Fed. Rep. 59). Facts were in evidence tending to prove such an excuse, and it was for the jury to say whether they established it. Wood, Master and Servant, sec. 121 and sec. 123, note 2; *Leatherberry* v. *Odell*, 7 Fed. Rep. 648; *Jones* v. *Vestry*, 19 Fed. Rep. 62. The second instruction states hypothetically certain facts from which, as evidence, the jury might have found that the breach of contract was waived. But it was not the province of the court to deduce from such facts, or any others, the conclusion that the breach was in fact waived. That, according to the rule quoted above, and conceded to be correct, was a deduction which the jury alone could make; and it was not proper that they should make it without considering circumstances from which they might have concluded that the delay in discharging the plaintiff was excusa-

ble. The instruction makes no mention of these circumstances, and was erroneous because it did not therefore leave it to the jury to say, from all the evidence, "whether in fact the breach was condoned."

The court, of its own motion, required the jury to make special findings on the following questions: "First. Did plaintiff render defendants such service as was contemplated under the employment?" "Second. Did defendants, with knowledge of plaintiff's manner and method of keeping the books, retain him, without objection thereto, until they could dispense with his services?" To the first question a negative answer was returned, and the second was answered affirmatively. The general verdict being for the plaintiff, the defendants moved for judgment on the first special finding, and the motion was denied. The court set aside the first special finding on the ground that it was "against the weight of the evidence," and gave judgment for the plaintiff on the general verdict. The answer to the second question, although unfavorable to the defendants, was not conclusive, for reasons already stated.

If the answer to the first question had been inconsistent with the general verdict, it would have controlled, and in that case it would have been error to set it aside, leaving the general verdict to stand. (*L. R. & Ft. S. Ry.* v. *Miles*, 40 Ark. 298; *Ark. Midland Ry.* v. *Canman*, 52 Ark. 517.) But there is no inconsistency between the first special finding and the general verdict, since the jury might have found, as a basis for the latter, a waiver of the plaintiff's breach of the contract. On the special verdict the defendants were not therefore entitled to a judgment.

For the error in the court's charge the judgment is reversed, and the cause remanded for a new trial.