HALE HARDWARE COMPANY *v.* RAGLAND.

## Opinion delivered July 14, 1924.

1. MASTER AND SERVANT—WRONGFUL DISCHARGE—DUTY TO SEEK OTHER EMPLOYMENT.—A salesman, wrongfully discharged, is not bound to seek or accept other employment of a different character in order to minimize his employer's damages.

2. MASTER AND SERVANT—RIGHT TO DISCHARGE SERVANT.—The general rule is that an employer may lawfully refuse to continue in his employ a servant who has shown himself to be negligent, incompetent, inefficient or dishonest.

3. MASTER AND SERVANT—INJURY TO MASTER'S BUSINESS.—A servant, while engaged in the master's service, has no right to do any act which may injure his trade or undermine his business.

4. MASTER AND SERVANT—INJURY TO MASTER'S BUSINESS—EVIDENCE. —Evidence *held* not to show that a discharged servant was wilfully and knowingly guilty of any acts which tended to injure the business of his employer.

5. MASTER AND SERVANT—WRONGFUL DISCHARGE—REDUCTION OF DAMAGES.— Where a wrongfully discharged servant obtained employment for a time after his discharge, he thereby reduced the amount he was entitled to recover from his employer as damages for his wrongful discharge.

Appeal from Boone Chancery Court; *Ben F. McMahan,* Chancellor; affirmed.

*E. G. Mitchell, M. A. Hathcoat, Worthington & Williams,* for appellant.

Even if the contract relied upon by appellee was made, it was fraudulent, and the appellant was not bound by it. 33 Ark. 425; 12 R. C. L. pp. 238 and 239, §§ 1 and 2; Words & Phrases, vol. 2, "Fraud," p. 268. Though fraud was not raised by the pleadings, the court should have treated the pleadings as amended to conform to the proof. 124 Ark. 388; 98 Ark. 312; 100 Ark. 212; 152 Ark. 203. Appellee's demeanor to customers, and the fact that he was injuring the business of the company, were sufficient grounds for his discharge, even in the face of the contract. 58 Ark. 504; Wood, Master & Servant, pp. 167, 210, 211, 232; 26 Cyc. 987; 89 Minn. 77; 20 A. & E. Enc. Law, 2nd. ed. p. 33.

*George J. Crump,* for appellee.

Fraud will never be presumed where the act does not necessarily import fraud and may have as well occurred from a good as a bad motive. 17 Ark. 151; 9 Ark. 482; 11 Ark. 378; 22 Ark. 184; 144 Ark. 88. While appellee did make an effort to seek any kind of employment, he was not required to seek or accept employment of a different character. 158 Ark. 329; 58 Ark. 622; 9 Ark. 394; 63 Barb. 177; 2 Denio 609; Wood, Master & Servant, p. 250; 2 Sutherland on Damages, § 693.

HART, J. On the 22d day of December, 1922, the Hale Hardware Company brought suit in the chancery court against E. A. Ragland to obtain judgment for $40.26 for materials used in constructing a certain building in Harrison, Arkansas, and to declare the amount of said judgment a lien on said building.

E. A. Ragland filed an answer, in which he admitted that he owed the Hale Hardware Company the amount sued for, and, by way of cross-complaint, asked judgment against it for $725 as compensation due him for a breach of contract of employment.

The chancellor rendered a decree in favor of E. A. Ragland against the Hale Hardware Company for $559.74, and the case is here on appeal.

E. A. Ragland was the principal witness for himself. He admitted owing the Hale Hardware Company $40.26, and based his right to recover against the hardware company on the ground that he had been wrongfully discharged from its service. During the year 1921, and for several years prior thereto, the Hale Hardware Company was engaged in selling hardware at retail in the city of Harrison, Arkansas, and Ragland had been in its employment as a salesman. Prior to the year 1921 he had been employed by the month. At the first of the year 1921 John Hale, who was the manager of the business of the hardware company, employed E. A. Ragland to work for it for a period of one year at a salary of $1,500, to be paid in monthly installments. Ragland discharged his duties as salesman for the hardware com-

pany in a faithful and efficient manner. In the first part of July, 1921, he was discharged without any cause. There was another hardware firm in Harrison, and Ragland endeavored to obtain employment from it, and failed. He also went to other towns and cities and tried to get employment, but failed to do so. During the remainder of the year he worked at some other employment and made a small amount of money.

Ragland's testimony that he was employed for a year at a salary of $1,500 was corroborated by E. O. Lopp, a fellow-salesman, who was present when the contract of employment was made. John Hale was discharged as manager of the Hale Hardware Company soon after he employed Ragland, and Ragland was discharged by F. M. Angel, who succeeded Hale as manager of the hardware company.

John Hale was a witness for the Hale Hardware Company. He denied having employed Ragland for a year at a salary of $1,500, but stated that he had employed him by the month at a salary of $125. Hale denied having admitted to Ragland, in the presence of the latter's brother-in-law, that he had employed him for a year for $1,500, to be paid at the rate of $125 per month.

Ragland's brother-in-law testified that Hale made such an admission to him in the fall of 1921, after Ragland had been discharged.

Prior to his discharge, Ragland was paid every two weeks at the rate of $125 per month. Under this state of the record, the chancellor found that Ragland had been wrongfully discharged, and that the Hale Hardware Company owed him for the balance of his salary, $600 less $40.26 due by Ragland to the company, leaving a balance due Ragland of $559.74.

It cannot be said that the finding of the chancellor that the Hale Hardware Company had hired Ragland for a year for $1,500 was against the preponderance of the evidence. The company admitted that it only paid him up to the time of his discharge, during the first part of July. It was Ragland's duty to seek and accept other

like employment, but he was not required to seek or accept employment of a different character. *Van Winkle v. Satterfield,* 58 Ark. 617, and *Williams* v. *Robinson,* 158 Ark. 327.

The Hale Hardware Company claims, however, that it had grounds for discharging him. The general rule is that any person may lawfully refuse to continue in his employ a servant who has shown himself to be negligent, incompetent, inefficient, or dishonest. Ragland was impliedly bound by his contract of employment to serve the Hale Hardware Company faithfully and to refrain from doing any act knowingly and wilfully which might injuriously affect the business of his employer. This court has expressly held that a servant, while engaged in the service of his master, has no right to do any act which may injure his trade or undermine his business. *McMurray* v. *Boyd,* 58 Ark. 504.

The main grounds relied upon for discharging Ragland is that he was injuring the business of the hardware company by driving off its customers on account of his sympathy with the railroad strikers.

It appears from the record that, during the year 1921, there was a strike by the railroad employees at Harrison, Arkansas, and other points along the line of railroad running through Harrison and that portion of the State. The positions held by the strikers had been supplied by other persons, and the feeling between the strikers and those taking their places had become very bitter. The people along the line of the railroad took sides in the matter, because the railroad strike injured all classes of business along the railroad. The citizens were divided in the matter. Some of them sympathized with the strikers, and others became imbittered against them. F. M. Angel, the manager of the Hale Hardware Company, who discharged Ragland, said that it was his policy not to take sides, either for or against the strikers. He does not say, however, that he told Ragland that he must quit talking with the strikers in the store or refuse to allow them to congregate there. He does not even

testify that he directed Ragland to avoid sympathizing with the strikers in the store. He said that it was generally understood that Ragland was in sympathy with the strikers, and that he would allow them to congregate in the store, and would talk with them.

A number of other witnesses testified that they had quit trading with the store because they understood that Ragland sympathized with the strikers and permitted them to congregate in the store. All admitted that the feeling between the two factions had become very acute.

Angel further testified that, on one occasion, Ragland delayed about waiting on a customer. We do not think the evidence on this point was strong enough to warrant Angel in discharging Ragland for neglecting the business or injuring it. Ragland denies that he, on any occasion, neglected to wait on the customers or that he was not courteous to them. The proof does not show that he allowed the strikers to congregate in the store and act in a tumultuous or overbearing manner towards other customers of the store. The strikers were accustomed to purchasing goods from the store as they needed them. It does not appear that Ragland permitted the strikers to become boisterous or otherwise annoy the other customers. None of them heard him use any offensive language against those not in sympathy with the strikers. They said that his general attitude was one of sympathy for the strikers, and that they would see him talking with little groups of them in the store.

It is fairly inferable that the customers who quit trading at the store did so because they believed that Ragland was in sympathy with the strikers; but their conduct in this regard was the result of their own bitterness in the matter, and was not caused by the acts or conduct of Ragland. It does not appear that he did anything of an affirmative character that warranted the customers in carrying their trade to another store. If Ragland had been guilty of any affirmative conduct in the premises which caused them to quit trading with the Hale Hardware Company, this would have been grounds

for his discharge; but his mere sympathy with the strikers and his act in allowing them to meet in the store in a quiet manner was not cause for his discharge. It does not appear that Angel forbade him talking with the strikers or expressing his sympathy with them. As the situation became more acute and the two factions became more bitter towards each other, it was apparent that it would be difficult for the same store to keep both factions as its customers.

After examining the evidence carefully it does not seem to us that Ragland was guilty of any overt acts or conduct wilfully and knowingly which would tend to injure the business of his employer. He might have thought his quiet sympathy with the strikers would hold their trade, and that he would not lose the trade of the other faction. If Angel thought otherwise, he should have advised or directed Ragland what course to pursue in the matter during business hours. In any event, the evidence does not show that he was wilfully and knowingly guilty of acts which of themselves tended to injure the business of his employer.

Upon the cross-appeal it need only be said that Ragland obtained other employment for a time after his discharge, and thus reduced the amount he was entitled to recover. It cannot be said that the weight of the evidence is against the finding of the chancellor in any respect, and the decree will be affirmed.