STATEMENT BY THE COURT.
Appellant instituted this action in the Bradley Circuit Court against appellee, the Bradley Lumber Company, to compensate an injury received while in the employ of appellee, and for cause of action alleged.
"Plaintiff states that among other property operated by defendant is the fuel house, which is a rectangular building of brick construction, about 30 x 60 feet: that blow pipes lead from other parts of the mill to said fuel house, and that fuel and waste collected in various parts of the mills and factories operated by defendant are forced into said fuel house by being blown by large fans through the blow pipes into what is commonly known as the cyclone or collector, which is a device upon the top of said fuel house, and is so arranged that the fuel may be diverted from one side of the fuel house to the other by the operation of said mechanical devices; that, at the time plaintiff was injured, he had been directed to relieve the fireman's helper so that the fireman might have time to eat breakfast; that, while plaintiff was engaged in the duties which his superiors had directed him to perform, he was on the outside of the fuel house, at the fuel window, raking out dry fuel to supply the furnaces, and that, while he was so engaged, the fireman returned to duty, *Page 617 
without the knowledge of plaintiff, and that, while plaintiff was so engaged in the duties which he had been directed to perform, the said fireman's helper negligently, wrongfully, carelessly, and without giving any warning whatever to plaintiff, turned the current of the huge fans which they use to blow fuel and waste into the fuel house and to divert the fuel into the various parts of the fuel house in to that part of the fuel house where plaintiff was working, and that there was blown into the plaintiff's eyes some dust and other debris which caused an injury to the left eye of the plaintiff."
An answer was filed by appellant, specifically denying the negligence alleged, and, on January 13 and 14, 1933, said cause was tried to a jury, which returned a verdict in favor of appellee.
The testimony on behalf of appellant was to the effect that, at the time of the injury, appellant was engaged in the performance of the duty of a fireman's helper; that appellant's general duties were as an operating engineer, and his actions were controlled by the directions of his foreman, a Mr. Rogers; that on the morning of January 30, 1932, appellant was required to relieve one Elmore, to the end that said Elmore might eat his breakfast; that, while discharging Elmore's duties as assistant fireman, in the usual and ordinary manner, appellant was standing at a window on the west side of the fuel house, engaged in raking dry fuel into the intake pipe of the fan, which is used to convey fuel from the fuel house to the stoker magazine in the boiler room; that in performing this duty, appellant was working under the directions of his foreman, Rogers, and as fireman's helper for Elmore; as fireman's helper, it was the fireman's duty to furnish to the fireman the correct mixture of fuel. Upon Elmore's return from eating his breakfast, he, "unbeknowing" to appellant, and without giving appellant any warning thereof, reversed the discharge of fuel from the opposite side of the fuel building to the side where appellant was engaged in the performance of his duties, thereby inflicting the injuries complained of. The effect of the reversal of the flow of fuel was to throw *Page 618 
dust, sawdust and other debris upon appellant, which filled his eyes with foreign matter and inflicting the injuries. That immediately after the injury, appellant went to the doctor's office, and the nurse there in charge removed the foreign matter from his eyes. The manner of collecting and discharging the fuel were as follows: The fuel house is a brick structure, approximately 30 x 60 feet. On top of the fuel house is a large cylinder or barrel-shaped container, wherein the fuel is accumulated from the planer, the sawmill and other places. The fuel is conveyed from the mill and other places by large pipes which are strung from the respective plants to the cylinder on top of the fuel house, and the fuel is forced through these pipes by air pressure into the large cylinder on top of the fuel house. The fuel thus accumulated in the cylinder is discharged into the fuel house by a large pipe which forks upon its entrance into the fuel house, and the discharge of the fuel into the respective forks of the discharge pipe is controlled by valves, the manipulation of which caused the fuel to be discharged first on the one side and then on the opposite side of the fuel house. These valves are manipulated by a chain which hangs on the outside of the fuel house, and may be reached by any one while standing upon the ground. The testimony discloses appellant received a very painful injury to his eye, if not a permanent one, but, from the view which we take of the case, it will be unnecessary to detail the testimony in reference thereto.
The testimony on behalf of appellee was in contradiction to that offered by appellant, which made a sharp conflict therein, for the consideration and determination of the jury.
Among the instructions given by the trial court to guide the jury in its consideration and determination of the issues thus presented by the testimony, instructions numbered 5 and 9 were submitted as follows: "No. 5. You are instructed that, while an employee assumes all risks and hazards usually and ordinarily incident to the employment he undertakes, he does not assume the risk of the negligence of the servant of the company for *Page 619 
which he was working, unless he knows of such negligence, if any, and appreciates the danger thereof. In other words, he has a right to assume, in the absence of knowledge to the contrary, not only that the master will perform his duty, but he has a right to assume that each of the other servants will perform his duty."
"No. 9. The court instructs the jury that, if you believe from the preponderance of the evidence that the plaintiff, Frank Gilliam, while engaged in the performance of the duties which he was under obligation to perform as an employee of the Bradley Lumber Company of Arkansas, and at a time when he was in the exercise of due care and caution for his own safety, and had not assumed the risk, another employee of the defendant, Bradley Lumber Company of Arkansas, without giving any warning or notice of any kind to the said Frank Gilliam, negligently and carelessly reversed a valve, thereby causing dust and rubbish to fill the eye, or eyes, and face of the said Frank Gilliam, as alleged in the complaint, and that, as a result thereof, the plaintiff was injured, from which injury he has been deprived of the use of his left eye, either in whole or in part, then your verdict will be for the plaintiff, and you will award him such damages as you believe he is entitled to recover, if any, under the rules prescribed in the other instructions in this case."
On behalf of appellee, the court gave to the jury its requested instruction number 8, as follows: "8. The jury are instructed that the particular act of negligence which the plaintiff charges the defendant in this case is that one Rufus Elmore, a fellow-servant of plaintiff, pulled a valve and changed the way the fuel would fall into the fuel house, without giving any signal or warning that he was going to do so. With reference to this charge of negligence, the court tells you that the mere fact that Elmore pulled the chain at the time he did, and the mere fact that plaintiff got sawdust in his eye, would not be sufficient in itself to justify a finding on your part that Elmore was guilty of negligence. Before you would be justified in finding that Elmore was guilty of negligence causing the accident complained of, you must further *Page 620 
find from a preponderance of evidence that, at the time Elmore pulled the chain, a reasonably prudent person, situated as Elmore was, should have reasonably foreseen that an injury might result to one of his fellow-workmen from his pulling the chain at the time and in the manner that he did. Unless you should find from the preponderance of the evidence that a reasonably prudent person, in the exercise of ordinary care, situated as Elmore was, should have foreseen that the pulling of the chain at the time in the manner that Elmore pulled the chain in question might result in injury to one of his fellow-workmen, it is your duty to return a verdict for the defendant."
The above statement will suffice to show the respective theories of the parties and the views of the trial court in reference to the law governing the same.
The verdict of the jury, and judgment of the court, were in favor of appellee, and this appeal is prosecuted therefrom.
(after stating the facts). Appellant's requested instructions, Nos. 5 and 9, which were given by the trial court, are correct declarations of law when applied to the facts of this case. On the other hand, appellee's requested instruction No. 8, as given by the trial court, is in irreconcilable conflict with instructions Nos. 5 and 9, given upon appellant's theory. Appellee's instruction No. 8 tells the jury: "The jury are instructed that the particular act of negligence which the plaintiff charges the defendant in this case is that one Rufus Elmore, a fellow-servant of plaintiff, pulled a valve and changed the way the fuel would fall into the fuel house, without giving any signal or warning that he was going to do so. With reference to this charge of negligence, the court tells you that the mere fact that Elmore pulled the chain at the time he did, and the mere fact that plaintiff got sawdust in his eye, would not be sufficient in itself to *Page 621 
justify a finding on your part that Elmore was guilty of negligence."
Appellant's requested instruction No. 9 had, in effect directed the jury to find for appellant, if they determined from the testimony that Elmore reversed the valve of the discharge pipe without warning to appellant, and thereby reversed the discharge of the fuel from the opposite side of the building in and upon appellant; and, if this were determined to be negligence upon Elmore's part, and this was the proximate cause of appellant's injury if any, then they would find for appellant. Appellee's instruction No. 8 as given by the trial court, was in direct conflict with the views expressed in appellant's requested instruction No. 9, because in instruction No. 8 the jury is directed in effect that appellant could not recover merely because Elmore negligently reversed the fuel valves, and was injured thereby. Under a long line of decisions of this court, it is reversible error to give conflicting instructions. Postal Telegraph-Cable Co. v. White, ante p. 361; Southern Anthracite Coal Co. v. Bowen, 93 Ark. 140.
Not only is appellee's requested instruction No. 8 in conflict with appellant's instructions, but it also invades the province of the jury, and is upon the weight of the evidence. It was a question for the jury to determine, and not for the court, whether or not the reversing of the fuel valves by Elmore, or the reversing of the discharge of the fuel into the fuel house, upon appellant, without warning, at the time and under the circumstances of this case, was negligence; and, if so, whether or not this negligence was the proximate cause of the injury, if any.
This court has many times held that it is error for trial courts to point out inferences to be drawn from particular facts in evidence. Haley v. State, 49 Ark. 439,5 S.W. 880; Rector v. Robins, 82 Ark. 424, 102 S.W. 209; McLemore v. State, 111 Ark. 457, 164 S.W. 119.
Many, many times we have also held that trial courts should not instruct juries upon the weight of the evidence or give instructions which assume facts which are for the consideration of the jury. Polk v. State, 45 Ark. 165; *Page 622 
Railroad Co. v. Byars, 58 Ark. 108, 23 S.W. 583; Murray v. Boyd, 58 Ark. 504, 25 S.W. 505; Hinson v. State,133 Ark. 149, 201 S.W. 811; Railroad Co. v. Britton,107 Ark. 158, 154 S.W. 215.
Many other alleged errors are pressed upon us for reversal, but we assume that they will not recur upon retrial, therefore do not consider them.
For the error indicated, the cause is reversed, and remanded for new trial.
SMITH, McHANEY and BUTLER, JJ., dissent.