## McLEMORE v. STATE.

### Opinion delivered February 16, 1914.

1. LARCENY—INDICTMENT—ALLEGATION OF OWNERSHIP.—In an indictment for larceny, the allegation of ownership is material and must be proved as alleged. (Page 462.)

2. EVIDENCE—EXPRESSION OF OPINION BY TRIAL JUDGE.—In a prosecution for larceny, it was error for the trial judge to charge the jury that if they found that defendant made a confession which was attributed to him, that the law presumed the statements so made by him to be true, as such a charge is in effect an expression of the judge's opinion on the weight of the evidence, which is prohibited by art. 7, § 23, of the Constitution of 1874. (Page 463.)

3. Confessions—conviction must be supported by other evidence.—In order to warrant a conviction under an indictment for larceny, there must be proof of the larceny other than an alleged confession of the defendant. (Page 464.)

4. Confessions—conviction—other evidence.—It is error in a prosecution for larceny to charge the jury that defendant may be convicted upon his confession alone, made to a detective. (Page 464.)

5. Larceny—crime charged in indictment—conviction.—Where defendant was indicted for stealing one cow, the property of M., it is error to charge the jury that defendant may be convicted of stealing another cow, at another place and time. (Page 465.)

Appeal from Union Circuit Court; *W. E. Patterson,* Judge; reversed.

STATEMENT BY THE COURT.

H. E. McLemore was indicted for the crime of larceny, charged to have been committed by stealing a cow belonging to C. H. Murphy, in Union County, Arkansas. The facts, as developed by the State, are substantially as follows:

In the latter part of the year 1911, C. H. Murphy, of El Dorado, in Union County, Arkansas, and Cage McLemore, of Felsenthal, in the same county, entered into a verbal contract by which it was agreed that C. H. Murphy should furnish the money with which to purchase cattle to be placed on what is known as the "Felsenthal range," in said county. McLemore, under the agreement, was to purchase the cattle and place them on the range, and was to receive no pay therefor. The money advanced by Murphy was to be refunded from the proceeds of the sale of the cattle, with interest thereon at the rate of 10 per cent per annum, and the profits remaining were to be equally divided between Murphy and McLemore. Pursuant to this agreement, Cage McLemore commenced purchasing cattle and placing them on the Felsenthal range. By the fall of 1912, 270 cattle had been purchased, altogether, under this contract, and placed on said range. Some of the cattle were shipped out, but it was estimated in October, 1912, that 245 head of the cattle still remained on the range. On the 18th day of October, 1912, Murphy and

Cage McLemore entered into a written agreement which provided, in effect, that the title to all of said cattle should remain in Murphy until the purchase money for them should be refunded, together with interest at the rate of 10 per cent per annum, and that after the cattle should be sold, and the amount expended by Murphy in their purchase should be repaid him, the profits, if any, were to be divided between Murphy and Cage McLemore; that the title to the cattle at no time was to be in McLemore. Soon after this, Cage McLemore became sick, and was unable to look after the cattle for several months.

Murphy testifies that at frequent intervals he rode over the range with Cage McLemore for the purpose of examining the cattle; that in February, 1913, there were 244 head of the cattle on the range, and that in June, 1913, there were only 144 head of cattle on the range; that he suspected the defendant, H. E. McLemore, and his brother-in-law, Gordy Harris, of stealing the cattle; that about 83 head of them had disappeared from the range and had been stolen by some one; that he went to the house of the defendant and found where he had killed and butchered quite a number of head of cattle in a thicket near his house; that he found the head of a crumpled-horn cow there which had been killed not long before; that the marks on these horns were very peculiar, and that they corresponded to a cow which had been pointed out to him some time before by Cage McLemore as belonging to him; that the head of the cow showed that she had been killed with an axe, and he remembered that this particular cow had been branded with an "M" on the right hip. He further stated that he first had Gordy Harris arrested, charging him with the larceny of his cow, and that shortly after this he had a conversation with the defendant in which he stated to him that Gordy had become scared to death when they arrested him, and that he, the defendant, was uneasy for fear Harris would tell something.

R. E. Rowland testified that the defendant said to him, shortly after he was arrested: "Well, they are rid-

ing in behind me, and if I do not get some kind of help, I am going to have to turn it all up. I am not going to take it by myself.''

After Murphy suspected that the defendant and Gordy Harris had stolen his cattle, he employed the Burns Detective Agency, of New Orleans, to ascertain, if possible, if such was the fact. Two employees of this detective agency went to the defendant's house and represented themselves to be cattle men. One of them represented himself to be named McLemore and persuaded the defendant to believe that he was kin to him. They stated, in substance, that the defendant, after they had gained his confidence, confessed to them that they had stolen from Murphy quite a number of the cattle which were on the Felsenthal range.

Other evidence was introduced by the State, tending to connect the defendant with the theft of the cattle.

The defendant testified in his own behalf, and denied that he had stolen the cattle. He denied that he had confessed to the detectives that he had stolen the cattle, and denied that he had made the statements to Rowland and to Murphy which they attributed to him. Other evidence was introduced by the defendant tending to show that quite a number of the cattle of Murphy which ran on the Felsenthal range had died of starvation and exposure during the winters of 1911-1912 and 1912-1913. Evidence was also introduced by the defendant tending to show that the crumpled-horn cow which was found at his slaughter-pen had been purchased by Gordy Harris from another person, and that he and Gordy Harris had been engaged in the business of butchering cattle and selling them.

The jury returned a verdict of guilty, and the punishment of the defendant was fixed at a term of one year in the State penitentiary. From the judgment of conviction the defendant has duly prosecuted an appeal to this court.

*H. S. Powell,* for appellant.

1.   The court invaded the province of the jury in its instructions with reference to the confessions of the defendant.   In its instruction numbered 3, it not only intervened as to the weight of the testimony in telling the jury that the facts detailed in the statements of the defendant were legally presumed to be true, but it also confined them to the single question whether or not the confessions were made.   The instructions are further erroneous in failing to explain to the jury how far the truth of this presumption of law should be considered in arriving at the guilt of the defendant.   A conviction can not be had upon extra-judicial confessions alone, but the *corpus delicti* must be proved by other evidence.   Kirby's Dig., § 2385; 77 Ark. 126; 94 Ark. 343, and cases cited; 1 Greenleaf on Evidence, § § 214-216; 22 Ark. 79; 34 Ark. 518; 59 Ark. 439; 84 N. C. 803.

2.   In an indictment for larceny, the allegation of ownership of the property alleged to have been stolen is material, and must be proved as alleged.   Instruction 11, requested by appellant, should have been given.   73 Ark. 32; 55 Ark. 244; 58 Ark. 17; 97 Ark. 3; 63 Ark. 518; 74 Ark. 442; 145 U. S. 611; 54 Ark. 384; 79 Ark. 499; 91 Ark. 28; 80 Ark. 23; 87 Ark. 412.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1.   The instructions with reference to the confessions were not erroneous.   Admissions against interest are always admissible in evidence and are presumed to be true; but in these two instructions the jury were told that they might consider the confessions in connection with the other evidence in the case.   84 Ark. 88-92; 94 Ark. 343, 344.   We think there is sufficient proof establishing the *corpus delicti.*   109 Ark. 446; *Id.* 332; *Id.* 365.

2.   The instruction 11 requested by appellant was properly refused.   The question whether or not a partnership existed between the prosecuting witness and Cage McLemore, or whether the legal title to the prop-

erty remained in the prosecuting witness, was one for the court. The court's finding is supported by the facts in the case.

HART, J., (after stating the facts). It is first insisted by counsel for the defendant that the court erred in refusing to give instruction No. 11, asked by him. We do not think the court erred in refusing to give this instruction. It is as follows:

"If you find from the evidence in the case that it was the intention of C. H. Murphy and Cage McLemore to form a partnership for the benefit of each, and that each of them contributed either money or services to said partnership, with the understanding that there should be a community of interest in the profits of the business in a fixed proportion, then you are told C. H. Murphy was not the owner of the cow referred to in the indictment, but it was partnership property, and it will be your duty to find the defendant not guilty."

It is true that in indictments for larceny, the allegation of ownership is material, and must be proved as alleged. *Wells* v. *State,* 102 Ark. 627; *Fletcher* v. *State,* 97 Ark. 1. The record shows that on the 18th day of October, 1912, Murphy and Cage McLemore entered into a written agreement whereby the title to the cattle was to remain in Murphy until they had been sold, and the purchase money refunded to Murphy; that the title to the cattle at no time was to be in McLemore. There is no attempt made to contradict this evidence, and it is therefore undisputed that Murphy had the title to the property, and the exclusive possession and control thereof. See *Cook* v. *State,* 80 Ark. 495.

It is next contended by counsel for defendant that the court erred in giving instructions Nos. 3 and 4, as follows:

"The jury is instructed that the verbal statements of the defendant that have been testified to in this case may be taken into consideration with all other evidence in this case. What the proof may show you, if anything, that the defendant has said against himself, the law presumes

to be true, but whether the defendant made such statements, or not, is a question for you to determine from the evidence in the case." (No. 3.)

"You are instructed that it is the duty of the jury to treat and consider any confessions proven to have been made by the defendant precisely as any other testimony; and, hence, if the jury believes the whole confessions to be true, they will act upon the whole as the truth. But the jury may believe that which charges the defendant and reject that which is in his favor, if from the evidence they find the former to be true and the latter to be untrue. The jury is at liberty to judge of it, like other evidence, by all of the circumstances in the case." (No. 4.)

The court erred in giving each of these instructions. In regard to instruction No. 3, it may be said that section 23, article 7, of our Constitution, provides that judges shall not charge juries with regard to matters of fact, but shall declare the law. The alleged confession of the defendant stands like any other declaration made by a party to the cause, leaving the jury to judge from all the circumstances, including the nature of the offense, how much, if any, weight should be given to it. As stated by Mr. Justice Riddick, speaking for the court, in the case of *Brewer* v. *State*, 72 Ark. 145, "While all parts of the confession must be considered, yet the jury were not required to believe such portions of it as seemed to them unreasonable and improbable." See, also, *Greenwood* v. *State*, 107 Ark. 568, 156 S. W. (Ark.) 427; 1 Greenleaf on Evidence (16 ed.), § 216; *Commonwealth* v. *Killian*, 194 Mass. 153, 10 Am. & Eng. Ann. Cases 911; *People* v. *Gukosky*, 250 Ill. 231, 23 Am. & Eng. Ann. Cases 297; *State* v. *Berberick*, 38 Mont. 423, 16 Am. & Eng. Ann. Cases 1077. The instruction complained of was erroneous in that it told the jury that if it found the defendant made the confessions attributed to him, the law presumed the statements so made by him to be true. This was, in effect, an expression of opinion by the court on the weight of the evidence, and was prohibited by the clause of our Constitution above referred to. The jury was not bound to be-

lieve as true the alleged confessions made by the defendant, but it might give to the confessions such weight as the jury found proper, in view of all the other facts and circumstances adduced in evidence.

It is contended by the Attorney General that the jury was made the sole and exclusive judge of the weight and credibility to be given to the alleged confessions in other instructions given by the court. This may be true, but it will be readily seen that the instruction complained of is in direct and irreconcilable conflict with such other instructions, and that such other instructions can in no sense be said to be explanatory of the instruction of which complaint is now made. Therefore, the instruction was erroneous and prejudicial to the rights of the defendant.

In regard to instruction No. 4, it may be said that it allowed the jury to find the defendant guilty if it believed the confession of the defendant to be true. This is not the law. The alleged confession of the defendant was extra-judicial, and the defendant could not be convicted on it alone. There must be other proof to establish the *corpus delicti.* By which is meant that there must be other proof to show that the cow was feloniously taken by some one, but this may be established by circumstantial evidence. 25 Cyc. 120, and case note to 28 L. R. A. (N. S.) 536. In the case of *Harshaw* v. *State,* 94 Ark. 343, the court held that an extra-judicial confession may be considered in connection with other evidence tending to establish the guilt of the defendant, but that if there is no other evidence of the *corpus delicti,* the defendant can not be convicted on such confession. See, also, *Greenwood* v. *State,* 107 Ark. 568, 156 S. W. 427. Under instruction No. 4, as we have already seen, the jury were warranted in convicting the defendant upon the confession alone if it believed it to be true. Therefore the instruction was erroneous and prejudicial to the rights of the defendant.

It is also insisted by counsel for defendant that the

court erred in giving instruction No. 2, at the request of the State. The instruction is as follows:

"You are instructed that in arriving at your verdict in this case, you are not to confine yourselves to the cow, the head of which has been exhibited in evidence, but if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant, H. E. McLemore, did, in Union County, Arkansas, and within three years next preceding the return of this indictment into court, unlawfully, wilfully and feloniously take, steal and carry away any cow, the property of C. H. Murphy, with the felonious intent to convert the same to his own use, and to deprive the owner thereof, it will be our duty to convict."

We are also of the opinion that the court erred in giving this instruction. The indictment in this case charges the defendant with stealing one cow, the personal property of C. H. Murphy, and no other description of the cow is given in the indictment. The evidence on the part of the State was directed to the larceny of a cow with a crumpled horn, and the State elected to prosecute the defendant on the charge of stealing this cow. Therefore, he could not be convicted of stealing another cow at another place and time. See *Endailey* v. *State,* 39 Ark. 278.

Other assignments of error are urged by the defendant for the reversal of the judgment in this case. We have carefully examined them, and are of the opinion that the assignments are not matters which are likely to arise on a retrial of the case. Hence we do not deem it necessary to consider or determine them on this appeal.

For the error in giving instructions 2, 3 and 4, on the part of the State, the judgment will be reversed and the cause remanded for a new trial.