[No. 23462. *En Banc.* March 29, 1932.]

THE STATE OF WASHINGTON, *Respondent,* v. LULU GENE HILSINGER, *Appellant.*[1]

[1]Reported in 9 P. (2d) 357.

428

*John F. Dore, Wm. J. Conniff,* and *Joseph H. Johnston,* for appellant.

*W. J. Daly, Jr.,* and *John D. Carmody,* for respondent.

BEALS, J.—Defendant, Lulu Gene Hilsinger, December 21, 1930, in Jefferson county, shot and killed her husband, George Hilsinger, and, as a result of the homicide, was charged with the crime of murder in the first degree. She pleaded not guilty, and entered in addition, a special plea of "not guilty by reason of temporary insanity." On the trial, defendant admitted the killing, and sought to justify her act on the ground of self-defense. The judge sustained a challenge to the testimony introduced by the state in so far as the charge of first degree murder was concerned, but submitted to the jury the question of defendant's guilt or innocence of the crime of murder in the second degree. The jury found the defendant guilty, and from judgment and sentence on this verdict, defendant appeals.

■ The court instructed the jury, *inter alia,* as follows:

"When a person is assaulted and the assault is so fierce and imminent that the person assaulted honestly believes and has good reason to believe that he or she cannot retreat without manifestly increasing the danger to himself or herself, such person is not required to retreat, and if, in standing his or her ground and defending himself or herself, such person kills the assailant, it is justifiable homicide,—that is, such person assaulted may stand his or her ground and repel force with force, even to taking the life of the assailant if necessary, or, in good reason, apparently necessary, for the preservation of such persons own life or to protect him or her from great bodily harm."

To the giving of this instruction appellant excepted, and contends that the same constitutes reversible error entitling her to a new trial.

In the case of *State v. Cushing,* 14 Wash. 527, 45 Pac. 145, 53 Am. St. 883, an appeal from a conviction of the crime of murder in the second degree, this court held that a defendant charged with murder, who at the time of the homicide was upon his own premises where he had a lawful right to be, was under no obligation to retreat when attacked, but was entitled to stand his ground and defend himself with such force as, under all the circumstances, he at the moment honestly believed and had reasonable grounds to believe was necessary to save his own life, or protect himself from great bodily injury.

In the later case of *State v. Meyer,* 96 Wash. 257, 164 Pac. 926, a conviction of murder in the second degree was reversed because of error committed by the trial court in instructing the jury as follows:

"Before a person can take the life of an assailant he must be in a position where he cannot retreat without increasing danger to his life or subjecting himself

to great bodily harm, and if he can retreat without so increasing his danger to life or great bodily harm, he cannot successfully invoke the doctrine of self-defense,''

the court holding that,

'' . . . when one is feloniously assaulted in a place where he has the right to be and is placed in danger, either real or apparent, of losing his life or of suffering great bodily harm at the hands of his assailant, he is not required to retreat or to endeavor to escape, but may stand his ground and repel force with force, even to taking the life of his assailant if necessary, or in good reason apparently necessary, for the preservation of his own life or to protect himself from great bodily harm.''

Appellant testified that, on the day of the killing, she, her husband and three other persons were present in her home; that Mr. Hilsinger and one of the male guests had engaged in a fight, and that, after the combatants had been separated, Mr. Hilsinger used toward her vile and obscene language, and advanced toward her in a threatening manner, whereupon she, having armed herself with a pistol, warned him to stay away from her. She then testified:

''I went all the way back of my little serving table, just as far back as I could get. I was right against it and his eyes was like a madman's, looking right straight into mine, and I said 'Stop, George. Don't come to me. I will shoot.' Well, he just kept coming. All I could see was his mad eyes looking right into my face. That is all I could see, and he wasn't his length away from me. I just felt sick all in here; my heart just froze. I never saw myself raise the pistol. I never heard the gun fire. The next thing I remembered, I was standing there with the gun in my hand. George was on the floor, had fallen.''

A witness on behalf of the state testified:

''Q. Where was Mrs. Hilsinger? A. Directly in front of me, against the south wall of the house. Q.

Did you see her doing anything? What was was she moving? A. She wasn't moving. Q. Wasn't she backing up? A. She could not. Q. She was as far back as she could get? A. Apparently so."

There was no testimony to the contrary, so it appears, as contended by appellant, that she could not retreat from the position she was occupying at the time of the shooting. Appellant was where she had a right to be. The instruction complained of was erroneous, in so far as the same indicated that any obligation might have rested upon appellant requiring her to retreat before she was justified in defending herself. *Brown v. United States,* 256 U. S. 335, 18 A. L. R. 1276 (and note).

Appellant was entitled to have her theory of the case, that she shot in justifiable self-defense, properly submitted to the jury, free from confusing instructions. Upon appellant's testimony and other evidence upon which she relied, no obligation to retreat rested upon her. She was justified in standing her ground, and in defending herself by any means at her disposal.

While the evidence is sufficient to support a verdict of guilty of the crime of murder in the second degree, we find therein no basis for any instruction intimating that any obligation might have rested upon appellant requiring her to retreat. The doctrine of retreat was not applicable to any theory of the case. It had nothing to do with the state's theory that appellant was guilty of murder, and it was nowise applicable to appellant's theory that she was acting in self-defense.

In view of our conclusion as to another assignment of error relied upon by appellant, it is not necessary to determine whether or not the instruction above set forth was, under all the circumstances, and considered as a whole, prejudicial, or whether the instruction would, of itself, constitute reversible error. We are,

however, clearly of the opinion that the instruction, in so far as the same referred to the matter of any possible obligation resting upon appellant to retreat, was, as stated by this court in the case of *State v. Meyer, supra,* referring to a similar instruction, "erroneous, misleading and confusing."

■ The court, in defining the crime of murder in the second degree, instructed the jury as follows:

"The state, by the information filed herein, has charged the defendant with the crime of murder in the first degree, but the charge of murder in the first degree has been withdrawn from your consideration. Under the law of this state, the crime of murder in the second degree is an included offense.

"Murder in the second degree is the killing of a human being, when committed with design to effect the death of the person killed, but without premeditation."

Murder in the second degree is, by Rem. Comp. Stat., § 2393, defined as follows:

"The killing of a human being, unless it is excusable or justifiable, is murder in the second degree when—

"(1) Committed with a design to effect the death of the person killed or of another, but without premeditation; . . ."

Appellant assigns error upon the giving of the foregoing instruction, and in support of her contention cites the case of *State v. Rader,* 118 Wash. 198, 203 Pac. 68. In the case cited, this court, referring to an instruction similar to that here complained of, said:

"The appellant complains of these instructions, we think justly. Murder in any form is the felonious killing of a human being. It is a killing without justification or excuse, yet all reference to this element is omitted by the court in its definition of murder in the first and second degrees. Under the instructions as given, the appellant could have been found guilty of murder either in the first or in the second degree, no matter how clear his justification for the killing might

appear. Nor does the instruction contain any reference to the fact that there are modifications to the positive precepts there laid down. The omissions are especially harmful in the present case. The killing was admitted; the sole contention being that it was justifiable. The facts were such that the jury could have found, without a violation of its oath, that the killing was justifiable. Plainly, we think the appellant was entitled to have the element of justification called to the attention of the jury in its definitions of the degree of murder, especially since he in writing requested it.

"It is true that later on in its instructions the court did attempt to define justifiable homicide, but we cannot think this in any way cured the defect in the original instruction. It was given as an independent instruction without reference to the previous instruction, and consequently without indication that it was a modification of the previous instruction."

Respondent argues that the error in the instruction quoted was harmless, because the trial court, in a subsequent instruction, told the jury that the homicide, unless excusable or justifiable, constituted murder in the second degree, if they found beyond a reasonable doubt the presence of certain elements of that crime, which were defined by the court; and that, if the jury should find from all of the evidence that the state had proven beyond a reasonable doubt the existence of each of such elements of the crime of murder in the second degree, it would be the duty of the jury to return a verdict of guilty, unless they should further find that the killing was justifiable, or that, at the time of the killing, the defendant was insane or mentally irresponsible. Respondent also relies upon the instruction which the court gave defining justifiable homicide.

The decision of this court in the case of *State v. Rader, supra,* is controlling here. Appellant excepted to the giving of the instruction defining murder in the

second degree, on the express ground that the same omitted the words "excusable or justifiable," and in her exception referred to the *Rader* case as an authority. In the case at bar, as in the case cited, the homicide was admitted, the accused contending that it was justifiable. The instruction defining justifiable homicide, given by the trial court in the case at bar, is practically identical with that given in the case of *State v. Rader,* and, under the holding in the latter case that the appellant therein "was entitled to have the element of justification called to the attention of the jury in its definitions of the degree of murder," it must be held that the trial court, in the case at bar, committed reversible error in leaving out of its instruction defining murder in the second degree the elements of excuse or justification.

In instructing a jury as to the statutory definition of the crime with which a defendant stands charged, all of the pertinent elements contained in the statute should be set forth. The instruction here complained of was certainly unfair to the appellant, and we are not inclined to overrule the prior decision of this court to the effect that the error cannot be cured by subsequent instructions such as were here given.

■ The state introduced testimony to the effect that appellant, shortly after the shooting, had said that she had shot her husband, but that she had not intended to kill him; making at the same time other statements to the same effect. The court instructed the jury that, in presenting testimony as to such admissions or confessions on the part of appellant, the state vouched only for the fact that such an admission or confession was actually made, and that the state was not bound by any self-serving declarations which the jury might find were contained in such admission or confession, if any such there were.

In so instructing the jury, the trial court evidently relied upon the opinion of this court in the case of *State v. Williams,* 142 Wash. 673, 253 Pac. 1074, an appeal from a conviction of the crime of murder in the first degree, in which the court said:

"The state, when introducing purported confessions, is not bound by the self-serving declarations therein contained, but vouches only for the fact that the admission or confession was actually made."

This language was used in connection with a discussion of the appellant's contention that this court should hold, as matter of law, that the state had not proved premeditation. The rule laid down is correct when applied to such a situation as was presented in the case cited, to-wit, a ruling by the court upon the sufficiency of the evidence introduced by the state to carry the case to the jury. A different question is presented in the case at bar, appellant here complaining of the embodiment of the principle in an instruction to the jury.

After careful consideration, we are of the opinion that the instruction was incorrect, in view of the provision of the constitution of this state forbidding trial courts to comment upon the facts. The question is a close one, but we conclude that the rule laid down in the case of *State v. Williams, supra,* should be limited in its application to questions of law presented to the court, based upon alleged insufficiency of the evidence to carry a case to the jury, or to support a verdict of guilty. *McLemore v. State,* 111 Ark. 457, 164 S. W. 119; *Clay v. State,* 15 Wyo. 42, 86 Pac. 17.

Early in the trial, the state requested that the jury be taken to inspect the house in which the homicide occurred. Appellant did not consent to the view by the jury, but the trial court directed the bailiff to take the jury through the premises. Appellant's counsel

indicated a desire to accompany the jury, and the court granted permission that this be done. After the recess occasioned by the inspection, counsel for appellant, in the absence of the jury, moved the court to declare a mistrial, stating in open court that appellant and her counsel were excluded from the house while the same was exhibited to the jury. In the course of the argument upon this question, counsel for the prosecution admitted that the statement made by appellant's counsel as to what occurred at the house was substantially correct. The court denied appellant's motion, and subsequently, at the hearing on appellant's motion for a new trial, adhered to its ruling to the effect that the exclusion of appellant and her counsel from the house did not constitute error of which appellant could take advantage.

In the case of *State v. Lee Doon,* 7 Wash. 308, 34 Pac. 1103, a prosecution for the crime of assault with intent to commit murder, it appeared that the defendant requested the court to allow the jury to inspect the premises where the alleged assault had occurred. The request was granted, and the jury viewed the premises. The defendant did not ask to be allowed to accompany the jury, and did not do so. On appeal, the defendant contended that the trial court had erred in allowing the jury to view the premises in the absence of defendant. This court held that a view does not constitute any part of the trial, and that the same is not had for the purpose of obtaining evidence.

In the case of *State v. Much,* 156 Wash. 403, 287 Pac. 57, it appeared that, after the close of the state's case, the defendant requested that the jury be permitted to view certain localities referred to in the testimony. Neither the defendant nor his counsel accompanied the jury, and it did not appear that any request was made by or on behalf of the defendant that he or his counsel

be taken. On appeal, appellant contended that he could not waive his constitutional right to be present at all times during his trial, and that his absence from the tour of inspection, coupled with an instruction given by the court as to what constituted the evidence in the case, entitled him to a reversal. This court, sitting *En Banc,* adhered to the principle that a view of the premises is not a part of the trial, and that, the defendant having through his counsel demanded the view, the record disclosed no violation of defendant's constitutional rights.

In the case at bar, the state requested that the jury view the premises, and appellant did not give her consent to such action. It was evidently contemplated by the court that appellant should accompany the jury, and the court specifically directed that counsel for the respective parties be permitted to attend. We are satisfied from the record that, when the jury entered the house, the officers of the court in charge of the party excluded appellant, her guard and her counsel, and that thereupon appellant's counsel demanded that appellant and himself accompany the jury through the dwelling, which demand was refused. Immediately upon the return of the party to the court, appellant's counsel stated what had happened, and moved that the court declare a mistrial.

Under the circumstances here shown, we are of the opinion that appellant and her counsel should have been permitted to accompany the jury at all times while viewing the premises under order of the court. Appellant did not request the view, but, on the contrary, contended that the same was unnecessary. It was evidently contemplated by the court that appellant and her counsel would accompany the jury, and it can only be considered that this permission included the right of appellant to accompany the jury at all times. Cer-

tainly, it would be utterly illogical to hold that appellant had the right to accompany the jury up to the house, but had no right to accompany the jury through the same.

Assuming that a view of the premises is no part of the trial, and that, in cases where it appears that the defendant asks that the view be had and does not ask to accompany the jury thereon, the failure of the court to direct that the defendant accompany the jury violates none of his constitutional rights, and that, on appeal, no error may be predicated upon such a situation, we are of the opinion that a different situation is disclosed by the record in the case at bar, and that appellant's rights were violated by the refusal of the officers in charge of the jury to permit her and her counsel to accompany the jury through the house.

Finally, appellant complains of the conduct of counsel for the state in connection with the cross-examination of appellant. In the course of appellant's cross-examination, counsel for the prosecution exhibited to appellant several letters which appellant stated were in her husband's handwriting, and were received by her from him. The following then occurred:

"Mr. Carmody: Did you hear this, Mr. Dore? Mr. Dore: No. Mr. Carmody: The witness was asked if she had received any letters from her husband while he was in the hospital in San Francisco, and she said 'Yes.' She then said the letters she now has in her hand are in his handwriting. Q. These letters from your husband to yourself, are you willing that they be read to the jury? Mr. Dore: I object to the form of the question and as incompetent, irrelevant and immaterial. It is not a question of what she is willing to do. It is a question of whether the evidence is admissible or not. The Court: Objection sustained. Mr. Carmody: We offer them, then, your Honor. Mr. Dore: Object to them as incompetent, irrelevant, and

incompetent and hearsay. MR. CARMODY: As what? MR. DORE: As hearsay. You cannot bind a person by a letter you write. It does not prove the truth of any statement whatsoever. MR. CARMODY: The letters are offered now, your Honor, in rebuttal of her testimony as to his generally hostile and vicious attitude towards her, letters covering a considerable period of time, letters of the husband to his wife concerning the wife and the family. MR. DORE: You can rebut testimony by testimony, also. MR. CARMODY: The man is dead. MR. DORE: That is too bad. MR. CARMODY: A dead man cannot make a self-serving declaration. I realize they are perhaps subject to the objection that they are privileged communications— MR. DORE: Incompetent, irrelevant— MR. CARMODY: —and that was our purpose in asking. MR. DORE: Incompetent, irrelevant and immaterial, hearsay, do not tend to prove any fact. THE COURT: The objection will be sustained. Q. (By Mr. Carmody) Then may I ask this question: Do you object to the reading of the letters? MR. DORE: I object to the form of the question. The Court has held that they are not competent and inadmissible. I am objecting to that. I am running this case. She has nothing to do with it at all. MR. CARMODY: That is what I wanted to find out. MR. DORE: I ask that the jury be instructed to disregard the last question asked by counsel and any inference arising from it. THE COURT: The jury may disregard the question. MR. CARMODY: That is all, Mrs. Hilsinger. MR. DORE: That is all.''

The court having sustained appellant's objection to the admission of the letters in evidence, counsel for the prosecution should not have demanded of the witness, ''Then may I ask this question—do you object to the reading of the letters?'' Neither was counsel's comment upon the statement made by appellant's attorney in the course of his objection proper. Counsel should not indulge in such stage play, which tends only to obscure the real issues, and confuse the jury by appeal-

ing to prejudice and by injecting into the case matters not proper to be considered.

The state had offered the letters in evidence, and, on objection of appellant, the offer had been by the court refused. Appellant's counsel was, of course, conducting her case for her, and the question as to whether or not appellant, personally, objected to the reading of the letters was unfair. Counsel for the state might properly have asked appellant to read the letters, and awaited a ruling from the court on objection by appellant's counsel, if one was interposed. The situation would then have been clearly presented, regularly and fairly, and in a manner entirely in accord with sound practice. Whether or not this incident would, standing alone, be held reversible error, need not be discussed.

For error committed by the trial court, the judgment appealed from is reversed, with instructions to grant a new trial.

TOLMAN, C. J., PARKER, HERMAN, and BEELER, JJ., concur.

MILLARD, J. (dissenting in part)—I am not in accord with that portion of the majority opinion respecting the instruction as to appellant's admissions or confessions.

The constitutional provision that the trial judge shall not comment upon the evidence means no more than that the trial judge is prohibited from action or words having the effect of conveying to the jury the trial judge's personal opinion as to the truth or falsity of any evidence. There was no expression by the trial judge of his opinion on the facts, credibility of witnesses, and weight of the evidence. The instruction was in harmony with the rule (to which in my opinion

we should adhere) enunciated in *State v. Williams,* 142 Wash. 673, 253 Pac. 1074.

Otherwise than as above stated, I concur in the majority opinion.

MITCHELL and MAIN, JJ., concur with MILLARD, J.

HOLCOMB, J. (dissenting) — The instruction condemned in the prevailing opinion is not similar to that in *State v. Meyer,* 96 Wash. 257, 164 Pac. 926. There, the substance of the instruction was to the effect that a person seeking to justify homicide on the ground of self-defense was obliged to retreat from an assailant if he could do so without increasing danger to his life or subjecting him to great bodily harm, and only in case could he not so retreat could he safely invoke the doctrine of self-defense.

On the other hand, the condemned instruction in this case clearly and positively charged the jury that retreat was not necessary if the assault was so fierce and imminent that the person assaulted had good reason to believe, and honestly believed, that he or she could not retreat without manifestly increasing the danger to himself or herself, then such person was not required to retreat, but could repel force with force, even to the taking of life, if necessary; and if, in standing his or her ground and defending himself or herself, such person kills the assailant, it is justifiable homicide.

This instruction certainly was in consonance with the law as laid down in the *Meyer* case, *supra,* and which has been generally followed in this state. See cases there cited.

The instruction was in harmony with the testimony of appellant to the effect that the assault was fierce and imminent, and that she honestly believed she could not retreat without increasing the danger to herself. That, therefore, she did not retreat. Under such circum-

stances, she was not required to retreat, and the jury were so charged. The state of the evidence also renders the condemned instruction unprejudicial in any event.

Nor was there error in the instruction on confessions.

The judgment should be affirmed. I therefore dissent.