[No. 11087-7-III.    Division Three.    March 24, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. PATRICK H.
AHERN, *Appellant*.

*Hugh M. Spall,* for appellant (appointed counsel for appeal).

*David A. Pitts, Prosecuting Attorney,* for respondent.

THOMPSON, J. — Patrick H. Ahern appeals his conviction for possessing cocaine while in the Kittitas County Jail. The primary issue is whether Mr. Ahern's presence was constitutionally required at an in-chambers conference attended by the judge, the prosecutor, and defense counsel. We affirm.

John Andrew Williams was an inmate in the Kittitas County Jail on May 17, 1990. He was in the same tier as Mr. Ahern and was acting as a trusty, helping to serve food to the other prisoners. He testified that at mealtime that day, Mr. Ahern asked him if he could get him some baking soda, aluminum foil, and a Brillo pad. From his own experience with cocaine, Mr. Williams knew that these items were used to convert cocaine into rock form, and to make a pipe in which to smoke it. He stated he told Mr. Ahern he would see what he could do. The next day, Mr. Ahern's cell mate, Dennis Simpson, asked Mr. Williams to procure some baking soda.

Mr. Simpson also testified at Mr. Ahern's trial. He said that an inmate named Sims was in the cell next to theirs and that he saw Mr. Sims transfer a white powder, packaged in cellophane, to Mr. Ahern. He further stated he heard Mr. Ahern asking Mr. Williams for the baking soda.

Kenneth Sauby, a county corrections officer, testified that Mr. Williams came to him on the morning of May 18 and told him he suspected that cocaine was present in the unit which housed Mr. Ahern. Officer Sauby and another corrections officer, Yvette Schwartz, searched Mr. Ahern's cell. Officer Schwartz found a container with white powder in a Kodiak tobacco can on top of a table next to Mr. Ahern's bunk. The powder tested positive as cocaine. Several letters addressed to Mr. Ahern were next to the Kodiak can.

Detective Jerry Shuart of the Kittitas County Sheriff's Office talked to Mr. Ahern that same day in the Kittitas County Jail. Detective Shuart advised Mr. Ahern of his constitutional rights and obtained a waiver from him. Mr. Ahern said that he was aware of the cocaine in the tobacco can, but that Mr. Williams, the trusty, had given it to him. Then, on May 21, Detective Shuart received a message that Mr. Ahern wanted to speak to him again. He went to the jail, and after again advising Mr. Ahern of his rights, obtained another statement. This time, Mr. Ahern said the story about Mr. Williams giving him the cocaine was a lie; he really got it from Mr. Sims.

Mr. Ahern took the stand in his own defense. He told the jury that when Mr. Sims was transferred, the guards asked him to help pull the mattress in Mr. Sims' cell. He was allowed to keep the items of personal property which Mr. Sims had left, one of which was the Kodiak can. According to Mr. Ahern, Mr. Simpson took the can from him and hid it after they discovered it contained cocaine. He denied asking Mr. Williams for baking soda, aluminum foil, or a Brillo pad.

Mr. Ahern was convicted by a jury. At the sentencing hearing, Mr. Ahern told the court:

> [D]uring my trial I was cynical of the fact that you ordered my attorney and the prosecutor into your chambers. After my trial, I learned that my attorney had spoken to a State's witness, Mr. Simpson, over a phone call regarding his fifth amendment and his testimony and Mr. Pitts [the prosecutor] had granted Simpson immunity from prosecution. . . . Had I been aware of these elements of this malicious conspiracy I would have called for mistrial right away, fired my attorney . . ..

Did Mr. Ahern have a constitutional right to be present at the in-chambers conference at which his trial counsel's[1] contacts with witness Simpson were discussed?

Other than as contained in Mr. Ahern's comments at his sentencing hearing, the record makes no mention of the in-

---

[1]Appointed counsel on appeal was not trial counsel.

chambers conference. In its brief, the State concedes a meeting took place before trial. According to the State, the court asked defense counsel whether he had advised certain of the· State's witnesses to assert the Fifth Amendment when called to testify. Defense counsel denied doing so. Mr. Ahern argues that had he known his counsel was "accused" of "tampering"[2] with witnesses, he would have decided to represent himself during trial.

Article 1, section 22 of the Washington Constitution provides, in part: "In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel . . .".[3] In *State v. Duncan*, 7 Wash. 336, 35 P. 117 (1893), the defendant assigned error to the trial court's grant of a continuance at a pretrial hearing at which he was not present. *Duncan*, at 337, held:

> We are of the opinion, however, that [the constitutional] provision has reference to matters *connected with the trial*, and not to anything preliminary thereto, and the granting of a continuance is not a part of the trial, but is a preliminary matter.

(Italics ours.) Mr. Ahern contends the in-chambers conference at issue here was "connected with the trial", *see Duncan*, because it concerned defense contacts with witnesses the State intended to call at trial. We disagree.

■ Every court hearing which is held in a case relates in some way to trial. But the defendant does not have a blanket constitutional right to appear at all meetings between court and counsel. In cases decided under the fed-

---

[2]We note that even if defense counsel so advised the witnesses, it would not amount to tampering under RCW 9A.72.120. That statute provides:

"(1) A person is guilty of tampering with a witness if he attempts to induce a witness or person he has reason to believe is about to be called as a witness in any official proceeding or a person whom he has reason to believe may have information relevant to a criminal investigation to:

"(a) Testify falsely or, *without right or privilege to do so, to withhold any testimony*; . . .[.]" (Italics ours.)

[3]*See also* CrR 3.4(a), which reads: "The defendant shall be present at the arraignment, at every stage of the trial including the empaneling of the jury and the return of the verdict, and at the imposition of sentence . . .".

eral constitution,[4] the courts hold the defendant has the right to be present at every stage of his trial for which " 'his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.' " *State v. Rice*, 110 Wn.2d 577, 616, 757 P.2d 889 (1988) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 78 L. Ed. 674, 54 S. Ct. 330, 90 A.L.R. 575 (1934)), *cert. denied*, 491 U.S. 910 (1989). *See also State v. Thorpe*, 51 Wn. App. 582, 590, 754 P.2d 1050, *review denied*, 111 Wn.2d 1012 (1988); *State v. Jury*, 19 Wn. App. 256, 270, 576 P.2d 1302, *review denied*, 90 Wn.2d 1006 (1978); *State v. Walker*, 13 Wn. App. 545, 557, 536 P.2d 657, *review denied*, 86 Wn.2d 1005 (1975). Here, the subject of the in-chambers meeting was only tangentially related to Mr. Ahern's defense of the charge against him. He merely speculates his attorney was intimidated by the judge and that he might have proceeded pro se if he had known of the allegations. Speculation cannot serve as a basis for holding Mr. Ahern's presence had a substantial relation to his ability to defend. We therefore hold Mr. Ahern had no constitutional right to be present at the meeting.[5]

Affirmed.

---

[4]The federal constitutional right is based on the Sixth Amendment right to confrontation and the Fifth Amendment right to due process.

[5]Mr. Ahern urges this court to hold the state constitutional right is broader than the federal right. He cites *State v. Hilsinger*, 167 Wash. 427, 9 P.2d 357 (1932) as holding the defendant had the right to be present during a jury view. The United States Supreme Court in *Snyder* held to the contrary. He therefore argues the Washington Constitution has been interpreted as more protective than the United States Constitution. However, a reading of *Hilsinger* supports a much narrower holding than that identified by Mr. Ahern. The court noted at page 437 that the trial court contemplated the defendant and her counsel would attend the jury view, but, in fact, they were affirmatively excluded from the house while the jury was there. In those limited circumstances, the court held at page 438 that defendant's rights were violated. Moreover, Mr. Ahern fails to discuss all of the six criteria developed in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986) for use in interpreting our state constitution. Specifically, he provides no argument or authority indicating the subject matter here is of particular state interest or concern. For these reasons, we will not consider his independent state constitutional claim.

Pursuant to RCW 2.06.040, the remaining contentions and the court's answers to those contentions, having no precedential value, will not be published.

SHIELDS, C.J., and MUNSON, J., concur.