[No. 26168-5-II.   Division Two.   April 5, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. EUSTACE R. JENNINGS, *Appellant*.

*Rita J. Griffith* and *Kevin R. Cole* (of *Griffith & Cole, P.L.L.C.*), for appellant (appointed counsel for appeal).

*Gerald A. Horne, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for respondent.

HOUGHTON, J. — Eustace Jennings appeals his conviction of five counts of first degree robbery and one count of second

degree robbery. He argues that he was unconstitutionally restrained at trial and that the jury was instructed erroneously on the definition of display of a weapon. He also appeals his sentence of life without parole as a persistent offender, arguing that one of his prior convictions was not a "strike" for purposes of the Persistent Offender Accountability Act (the Act). He argues that the Act is unconstitutional because it does not require the sentencing court to prove all sentencing facts beyond a reasonable doubt and that the Act violates the Ex Post Facto Clause of the Constitution and is a bill of attainder. The State concedes that there is reversible error on count VI. We affirm counts I, II, III, IV, and V, reverse count VI, and remand for further proceedings.

## FACTS

### Count I

On August 3, 1998, Jennings entered a Key Bank branch in Tacoma and approached teller Paulette Carlson. He gave her a note that read, "Give me the money. Hundreds, fifties, twenties, or I will shoot you now." 6 Report of Proceedings (RP) at 95. One of Jennings's hands was free and the other was tucked inside his shirt. Carlson testified that she was afraid Jennings had a gun in his shirt and had the impression one was there, but she did not see it. The surveillance security videotape shows Jennings with a button-down shirt, but it does not show his hand position. No weapon is visible, and nothing in the videotape indicates that he has a weapon.

Carlson gave Jennings the money from her till.

### Count II

On August 12, 1998, Jennings entered a North Pacific Bank branch in Tacoma and approached teller Sherri Nall. Jennings gave her a note that read, "Give me the money or I will kill you." 7 RP at 201. Again, Jennings had one hand

tucked into his shirt, near his waistband. Nall testified that she had the impression that Jennings had a gun, but she did not see one. The videotape shows a man with a button-down shirt, but it does not show any hand position. No weapon is visible, and nothing in this videotape indicates that Jennings had a weapon.

## Count III

On August 13, 1998, Jennings entered Tillicum Food Center where Wesley Chase and Tonja Tison were working. Jennings pulled a gun and demanded money. As Jennings left, he said, "If any of you move, I'll kill you." 8 RP at 496. The security surveillance videotape clearly shows that Jennings displayed a gun.

## Count IV

On August 14, 1998, Kim Jones was working as a teller at the same North Pacific Bank branch that was robbed on August 12, 1998. Jennings entered the bank and when Jones asked if she could help him, he handed her a note that read, "Give me the money or I will kill you." 7 RP at 331. She had no money in her till so Jennings went to the next window, where another teller, Dawn Tooker, gave Jennings money. Tooker testified that Jennings pointed at her with something underneath his shirt. She did not see whether Jennings had a gun beneath his shirt.

The security surveillance videotape shows a man in an oversized T-shirt with his right hand apparently in his right pants pocket and his left hand at his waistband, outside his shirt. It is impossible to see whether there was a bulge in the shirt where his hand appeared to rest.

## Count V

On August 17, 1998, Lois Charlene Anderson was working as a teller at another branch of North Pacific Bank. Jennings approached her window and gave her a note she

could not read. Jennings told her he wanted money, and Anderson gave it to him. She did not know if Jennings would harm her; Jennings never said he had a weapon and Anderson never saw a weapon. Another teller, Vicki Seaman saw the note, which read, "Give me the money or I will kill you, 100, 50, 20." 9 RP at 534.

## Count VI

On August 18, 1998, Carol Beckwith was working as a backup teller at Washington Federal Savings. Jennings approached her and gave her a note that said, "Give me the money or I will shoot." 10 RP at 654. Beckwith gave Jennings money, including "bait" money that had recorded serial numbers. Jennings made no manifestations of a weapon here.

Jennings was arrested after a Pierce County sheriff's deputy recognized his car and then chased Jennings on foot. The bait money was found on Jennings's person. No weapon was found. At the Lakewood precinct, Jennings made a tape-recorded statement implicating himself. The trial court admitted the statements over Jennings's objections.

## Trial

At the beginning of trial, the court determined that Jennings required restraints in the courtroom. The trial court made this decision based on Jennings's prior robberies and assaults with weapons, the current charges, the possible sentence of life without parole, his attempt to escape arrest, his stature and build, the courtroom layout, and staff location. Jennings agreed to wear leg shackles rather than a stun belt. Although the trial court was concerned about jurors seeing the shackles as they entered the jury box, Jennings still preferred shackles over a stun belt.

Despite precautions, some jurors saw Jennings in handcuffs in the hallway, and the trial court declared a mistrial.

Jennings agreed to wear a stun belt instead of shackles during the second trial. To ensure that the stun belt would not be visible to the jury, the trial court ordered correction officers to arrange a loose fitting garment for Jennings. After the trial, the court noted that the stun belt had not been observable to anyone in the courtroom during the trial.

## Jury Instructions

Jennings excepted to jury instruction 25, which stated in part that a person " 'displays' a ... weapon ... if by his conduct or speech, he leads the victim to believe that he is actually armed with a deadly weapon, even though no weapon is seen." Clerk's Papers (CP) at 66. Jennings argued that the language "even though no weapon is seen" is misleading. The court gave this instruction over Jennings's objections.

The jury convicted Jennings as charged.

## Sentencing

The State charged Jennings under the Persistent Offender Accountability Act of the Sentencing Reform Act of 1981 (SRA),[1] arguing that previous convictions from other states made the current conviction a "third strike." The trial court concluded that Jennings had two prior convictions, each constituting a strike for purposes of the SRA: one from Dade County, Florida, and another from New Castle, Delaware.

The trial court sentenced Jennings to life in prison as a persistent offender. Jennings appeals his judgment and sentence.

---

[1] Former RCW 9.94A.010, .030, .120, .392-.394 (1998). Because Jennings' crimes occurred in August 1998, we apply the version in effect on that date.

## ANALYSIS

### Courtroom Restraints

Jennings first contends that the trial court abused its discretion when it required him to wear restraints in the courtroom.

██ A criminal defendant is entitled to appear at trial free from all bonds or shackles, except in extraordinary circumstances. *State v. Clark*, 143 Wn.2d 731, 772, 24 P.3d 1006 (citing *State v. Finch*, 137 Wn.2d 792, 842, 975 P.2d 967, *cert. denied*, 528 U.S. 922 (1999)), *cert. denied*, 534 U.S. 1000 (2001). A defendant may be physically restrained in the courtroom only when he or she is particularly obstreperous and disruptive and it is absolutely necessary to prevent escape, injury, or disorder in the courtroom. *Clark*, 143 Wn.2d at 773.

██ A claim of unconstitutional shackling is subject to a harmless error analysis. *State v. Damon*, 144 Wn.2d 686, 692, 25 P.3d 418, 33 P.3d 735 (2001). Case law is not clear, however, regarding whether shackling in the courtroom creates a presumption of prejudice that the State must overcome[2] or whether the defendant must demonstrate that the shackling was prejudicial.[3]

██ We need not resolve this conflict here because the stun belt was not visible to the jury. Because there was no possibility of prejudice to Jennings, we hold that any error in ordering Jennings to wear the stun belt was harmless under either standard.

---

[2] "The error will not be considered harmless unless the State demonstrates that the shackling did not influence the jury's verdict." *Damon*, 144 Wn.2d at 692 (citing *Clark*, 143 Wn.2d at 775 (citing *State v. Belmarez*, 101 Wn.2d 212, 216, 676 P.2d 492 (1984))).

[3] "In order to succeed on such a claim, a defendant must show prejudice, that is, 'a substantial or injurious effect or influence on the jury's verdict.' " *State v. Elmore*, 139 Wn.2d 250, 274, 985 P.2d 289 (1999) (quoting *State v. Hutchinson*, 135 Wn.2d 863, 888, 959 P.2d 1061 (1998), *cert. denied*, 525 U.S. 1157 (1999)), *cert. denied*, 531 U.S. 837 (2000).

## Display of a Weapon Instruction—Harmless Error

■ ■ Jennings next contends that the court erred in giving a jury instruction that defined "display of a weapon" to include speech that leads the victim to believe he is armed with a deadly weapon when no weapon is seen.[4] The State concedes that this instruction was given in error,[5] but it asserts that it was harmless. Jennings argues that this error is not subject to a harmless error analysis and that his first degree robbery convictions be reversed and convictions for second degree robbery be imposed.

Until recently, Washington law was clear that an instruction that relieves the State of its burden to prove an element of a crime is automatic reversible error.[6] But the United States Supreme Court has unsettled this previously settled issue.

■ ■ The United States Supreme Court held that a jury instruction that relieves the prosecution of its burden to prove an element of a crime is subject to harmless error analysis. *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999). In *Neder*, the Court held that when an error is structural, affecting the whole " 'framework

---

[4] Jury instruction 25 reads: "A person 'displays' a deadly weapon by making it actually visible to the victim. A person also 'displays' a weapon if, by his conduct *or speech*, he leads the victim to believe that he is actually armed with a deadly weapon, even though no weapon is seen." (Emphasis added).

[5] It is settled law that first degree robbery requires some physical manifestation of a possible weapon, something more than a verbal threat, even if no weapon is seen. RCW 9A.56.200; *In re Pers. Restraint of Bratz*, 101 Wn. App. 662, 674, 5 P.3d 759 (2000). The court's instruction in the present case, therefore, was erroneous because it removed the State's burden of proving that element of the crime of first degree robbery.

[6] *See, e.g.*, *State v. Smith*, 131 Wn.2d 258, 265, 930 P.2d 917 (1997) ("failure to instruct on an element of an offense is automatic reversible error"); *State v. Eastmond*, 129 Wn.2d 497, 502, 919 P.2d 577 (1996) ("By omitting an element of the crime of assault, the trial court here committed an error of constitutional magnitude."); *State v. Byrd*, 125 Wn.2d 707, 713-14, 887 P.2d 396 (1995) ("The State must prove every essential element of a crime beyond a reasonable doubt for a conviction to be upheld. . . . It is reversible error to instruct the jury in a manner that would relieve the State of this burden."); *State v. Pope*, 100 Wn. App. 624, 630, 999 P.2d 51, *review denied*, 141 Wn.2d 1018 (2000) ("A harmless error analysis is never applicable to the omission of an essential element of the crime in the 'to convict' instruction. Reversal is required.").

within which the trial proceeds,'" it taints the entire process, making it fundamentally unfair. *Neder*, 527 U.S. at 8 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)). Such errors can never be harmless. But an instruction that omits an element of the offense may not necessarily taint the entire trial or otherwise make it unreliable to determine guilt or innocence. *Neder*, 527 U.S. at 9. It is thus subject to a harmless error analysis.

Until now, Washington courts have not had the opportunity to either explicitly adopt *Neder* or overrule previous Washington cases.[7] With the present case, however, we are required to defer to the United States Supreme Court on this federal constitutional issue because Washington cases on this issue rely on either federal law[8] or earlier Washington cases.[9] *State v. Jones*, 106 Wn. App. 40, 43-44, 21 P.3d

---

[7] Nor do Washington cases provide us with useful guidance on this matter. Instead, decisions seem to nominally adhere to prior case law but then conduct a harmless error analysis. For example, in *State v. Cronin*, 142 Wn.2d 568, 580, 14 P.3d 752 (2000), our Supreme Court held that " '[i]t is reversible error to instruct the jury in a manner that would relieve the State of this burden' " (quoting *State v. Jackson*, 137 Wn.2d 712, 727, 976 P.2d 1229 (1999) (quoting *Byrd*, 125 Wn.2d at 713-14)). But later in the same paragraph, the Court "turn[ed] to the question of whether the instructional error in these cases can be labeled harmless." *Cronin*, 142 Wn.2d at 580. In *State v. Stein*, 144 Wn.2d 236, 246, 27 P.3d 184 (2001), the Court held that "[i]nstructional error is presumed to be prejudicial unless is affirmatively appears to be harmless" (citing *State v. Wanrow*, 88 Wn.2d 221, 237, 559 P.2d 548 (1977)).

[8] The *Jones* court cites the follow cases on this issue that follow federal law:

*See, e.g., State v. Smith*, 131 Wn.2d at 265-66 (citing state and federal case law); *State v. Roberts*, 88 Wn.2d 337, 562 P.2d 1259 (1977); *State v. Jackson*, 87 Wn. App. 801, 812-15, 944 P.2d 403 (1997) (relying on federal constitution and federal case law); *State v. Austin*, 59 Wn. App. 186, 796 P.2d 746 (1990); *see also State v. Johnson*, 100 Wn.2d 607, 620-21, 674 P.2d 145 (1983), *overruled on other grounds by State v. Bergeron*, 105 Wn.2d 1, 711 P.2d 1000 (1985) (indicating that, for purposes of determining whether harmless error analysis applies to a particular error, Washington courts will follow the lead of the U.S. Supreme Court).

*State v. Jones*, 106 Wn. App. 40, 44 n.5, 21 P.3d 1172 (2001).

[9] The *Jones* court notes the following cases cited no federal or state law grounds for their decision on this issue:

*See generally State v. Allen*, 101 Wn.2d 355, 358, 678 P.2d 798 (1984) (citing *State v. Carter*, 4 Wn. App. 103, 110-11, 480 P.2d 794 (1971), which in turn cites *State v. Turner*, 78 Wn.2d 276, 474 P.2d 91 (1970)); *State v. Emmanuel*, 42

1172 (2001).[10] We thus must follow *Neder* and determine whether the instructional error in the present case was harmless on each of the counts.

■ When conducting this analysis, the United States Supreme Court instructs us to use the test found in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). *Neder*, 527 U.S. at 15. Under that test, an error is harmless when "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *Neder*, 527 U.S. at 15 (quoting *Chapman*, 386 U.S. at 24). Applied to an element omitted from, or misstated in, a jury instruction, the error was harmless if that element is supported by uncontroverted evidence. *Neder*, 527 U.S. at 18. We must therefore thoroughly examine the record for any evidence that could lead to a rational contrary finding regarding the misstated or omitted element. *Neder*, 527 U.S. at 19. "[W]here the defendant contested the omitted element and raised evidence sufficient to support a contrary finding—[the reviewing court] should not find the error harmless." *Neder*, 527 U.S. at 19.

Jennings was convicted of five counts of first degree robbery, counts I, II, III, IV and VI.[11] Because the jury instruction at issue was in error regarding whether Jennings displayed a weapon, we must determine whether Jennings's first degree robbery convictions should be reversed and remanded for imposition of second degree robbery convictions. The error is harmless, and the first degree convictions will be affirmed, if it is clear beyond a reason-

Wn.2d 799, 259 P.2d 845 (1953); *State v. Hilsinger*, 167 Wash. 427, 9 P.2d 357 (1932); *State v. Rader*, 118 Wash. 198, 203 P. 68 (1922).

*Jones*, 106 Wn. App. at 44 n.6.

[10] Furthermore, we have not been asked to determine whether the Washington Constitution sometimes provides greater protection than the federal constitution on this issue, according to the requirements of *State v. Gunwall*, 106 Wn.2d 54, 61-62, 720 P.2d 808 (1986) (requiring analysis of six nonexclusive factors before a court will determine whether the state constitution affords greater protection than the United States Constitution).

[11] Count V was for second degree robbery.

able doubt that the erroneous instruction could not have contributed to the verdict. But the possibility that the jury convicted Jennings because of a mere verbal threat requires reversal. *In re Pers. Restraint of Bratz*, 101 Wn. App. 662, 676, 5 P.3d 759 (2000).

## Counts III and VI

We affirm Jennings's first degree robbery conviction on count III, the robbery of the Tillicum Food Center. It is uncontested that Jennings displayed a gun at the Tillicum Food Center. The testimony of the victims and the surveillance videotape confirmed this. Because there is no possibility that the erroneous instruction contributed to the verdict, the error is harmless here.

We reverse count VI because the State concedes that the jury instruction was not harmless regarding this count. We remand count VI for imposition of a second degree robbery conviction.

## Counts I, II, and IV

This leaves examinations of counts I, II, and IV. A first degree robbery conviction may be committed by displaying a weapon, which requires some physical manifestation beyond a mere verbal threat of harm with a deadly weapon. *Bratz*, 101 Wn. App at 676. In each of these remaining counts, the State presented evidence of a physical manifestation through witnesses who testified that Jennings held his hand in his shirt consistent with holding a gun. Jennings did not contest this evidence at trial.

In count I, Paulette Carlson testified that Jennings had his hand in his shirt. Carlson testified that, although she never saw a weapon of any kind, his hand gave her the impression that Jennings had a gun. In count II, Sherri Nall testified that "[Jennings's] right hand was tucked up under his shirt which gave the presence of a gun, but I didn't actually see one." 7 RP at 203. In count IV, Dawn

Tooker testified that the object beneath Jennings's shirt could have been his hand or it could have been a gun, but that "he was implying he had a gun." 7 RP at 251.

Because Jennings did not present any evidence to controvert this testimony, we conclude that no reasonable doubt remains: the erroneous instruction did not contribute to the guilty verdict for these counts. Accordingly, we hold the error harmless and affirm these first degree robbery convictions.

### Sentencing as a Persistent Offender—Strikes in Other States

Although we remand one of Jennings's first degree robbery convictions for imposition of second degree conviction, we address the sentencing issues Jennings raised to enable the trial court to correctly impose a new sentence.

Jennings argues that his conviction in Dade County, Florida, was not a "strike" for purposes of the Act. Jennings argues that his Florida conviction was constitutionally infirm. Specifically, Jennings argues that the documents entered into evidence to establish this conviction are facially invalid.

The Act provides that when an offender is convicted of a felony that is a "most serious offense," and the offender has two prior most serious offense convictions, he is a persistent offender and is subject to confinement for life without possibility of parole. Former RCW 9.94A.030(23), (27)(a)(i-ii) (1998); former RCW 9.94A.120(4) (1998). The prior offenses may be convictions from other states, if they are for felonies that, if committed in this state, would be most serious offenses and included in the offender score as set out in RCW 9.94A.360. Former RCW 9.94.030(27)(a)(ii).[12]

---

[12] A facially valid conviction from another state is sufficient in Washington under the Full Faith and Credit Clause, even if the judgment could not be sustained here in Washington. *State v. Gimarelli*, 105 Wn. App. 370, 377 n.6, 20 P.3d 430 (citing U.S. CONST., art. IV, § 1; *State v. Morley*, 134 Wn.2d 588, 619, 952 P.2d 167 (1998), *review denied*, 144 Wn.2d 1014 (2001); *Lee v. Ferryman*, 88 Wn. App. 613, 620, 945 P.2d 1159 (1997), *review denied*, 135 Wn.2d 1006 (1998)), *review denied*, 144 Wn.2d 1014 (2001).

■ When enhancing a sentence with prior convictions under the Act, the State must prove the prior convictions by a preponderance of the evidence. *State v. Gimarelli*, 105 Wn. App. 370, 374, 20 P.3d 430 (citing *State v. Ford*, 137 Wn.2d 472, 480, 973 P.2d 452 (1999)), *review denied*, 144 Wn.2d 1014 (2001). Judgment and sentence is the best evidence of a conviction. *Gimarelli*, 105 Wn. App. at 374. A prior conviction is presumed constitutional unless it is unconstitutional on its face without further elaboration, or another court has determined that it is unconstitutional. *Gimarelli*, 105 Wn. App. at 374-75 (citing *State v. Ammons*, 105 Wn.2d 175, 187, 713 P.2d 719, 718 P.2d 796, *cert. denied*, 479 U.S. 930 (1986)). Only then must the State prove the conviction's constitutionality. *Gimarelli*, 105 Wn. App. at 374-75 (citing *State v. Burton*, 92 Wn. App. 114, 117, 960 P.2d 480 (1998), *review denied*, 137 Wn.2d 1017 (1999); *Ammons*, 105 Wn.2d at 187-88 (requiring the State to prove the constitutionality of a prior conviction before it could be used as criminal history in a sentencing proceeding would turn such a proceeding into a de facto appellate review of the prior conviction)). The face of a conviction includes a judgment and sentence, or all documents signed as part of a plea agreement. *In re Pers. Restraint of Stoudmire*, 141 Wn.2d 342, 353-54, 5 P.3d 1240 (2000).

Here, the State relied on a judgment and sentence for a Dade County, Florida, conviction when sentencing Jennings as a persistent offender. Jennings argues that because a later order from the Florida court corrected other sentences for which Jennings was serving a sentence concurrent with Florida Case No. 80-9375,the initial judgment and sentence for it is facially invalid.

But the later Florida order specifically left in place the sentence for Case No. 80-9375 . Because the prior judgment and sentence is still valid for Case No. 80-9375, it may be relied on by the Washington trial court in the present case as evidence of a facially valid conviction when sentencing Jennings under the Act. Thus, Jennings's argument fails.

Jennings also argues that because he pleaded nolo contendere under Florida's Rules of Criminal Procedure,[13] the Florida court was required to enter the plea in open court. Even if this were true, Jennings's remedy would be to seek appellate review of that conviction in Florida courts. Moreover, Jennings does not produce any plea agreement documents for this conviction. This argument does not, therefore, impugn the facial validity of the Florida conviction. Because the judgment and sentence is available and facially valid, the Washington trial court need go no further.

We hold that the trial court may use the Dade County, Florida, conviction as a prior conviction when resentencing Jennings on remand.

### Constitutionality of the Persistent Offender Accountability Act

■■■ Jennings argues that *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), requires the vacation of his sentence because it renders the Act unconstitutional. Our Supreme Court recently settled this question by holding that *Apprendi* does not render our Act unconstitutional. *State v. Wheeler*, 145 Wn.2d 116, 124, 34 P.3d 799 (2001). Jennings's argument fails.

Reversed in part, affirmed in part, and remanded for further proceedings.

HUNT, C.J., and ARMSTRONG, J., concur.

Reconsideration denied April 22, 2002.

Review denied at 148 Wn.2d 1001 (2003).

---

[13] FLA. R. CRIM. P. 3.170(j):

Responsibility of Court on Pleas. No plea of guilty or nolo contendere shall be accepted by a Court without first determining, in open court, with means of recording the proceedings stenographically or by mechanical means, that the circumstances surrounding the plea reflect a full understanding of the significance of the plea and its voluntariness and there is a factual basis for the plea of guilty.

Appellant's Br. at 30.