IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33007-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOMMY JOE MONTENGUISE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Tommy Montenguise challenges his felony conviction for violation of a no-contact order, arguing that the trial court erred in making him wear a leg brace for security reasons without making proper findings. We agree with his argument, but conclude that the error was harmless because there is no evidence that the jury ever saw the restraint. The conviction is affirmed.

## FACTS

Mr. Montenguise was charged in the Thurston County Superior Court after his community corrections supervisor discovered he was living with his former girlfriend despite the fact that a no-contact order prevented them from being together. The matter ultimately proceeded to jury trial.

The prosecutor asked that the corrections department be allowed to put a leg brace

on Mr. Montenguise during the course of the trial, reasoning that the corrections

department was understaffed and the charge was a domestic violence offense. The court

granted the request, explaining the following:

> The potential for the jury to observe the brace is limited; the brace is
> covered by his pant completely and covered by his sock; he is sitting on the
> far side of counsel from the jury box; and any restrictions on his gait can be
> mitigated by excusing the jury; if Mr. Montenguise is going to take the
> stand; this is a domestic violence case; there is the potential for security
> issues when we have a protected party in the courtroom . . .

Report of Proceedings (RP) at 36.

The court went on to say:

> there hasn't been—I want to make this clear—there has been no showing
> that Mr. Montenguise personally has exhibited any violence or
> disruptiveness. His appearance before the Court this morning has been
> exemplary, but, nevertheless, it is clear that corrections is thinly staffed,
> and we have no quick ability to staff many corrections officers within the
> courtroom to prevent any potential issues.
>
> So I don't want to belabor this, but I'm finding that the use of the
> restraint is the least restrictive ability to assure safety in the courtroom,
> given the size of the courtroom we have and given the ability to mitigate
> the potential consequences of notifying the jury that it's being used.

RP at 36-37.

The jury convicted Mr. Montenguise as charged. He then timely appealed from a

standard range sentence.

ANALYSIS

The sole issue presented by this appeal concerns the propriety of the court's restraint ruling.[1] Although the court chose the least restrictive means to restrain Mr. Montenguise, its justification for restraining him is not supported in the record or the case law. Nonetheless, the record establishes that the error was harmless.

A defendant in a criminal case is entitled to appear at trial free from all bonds or shackles except in extraordinary circumstances. *State v. Finch*, 137 Wn.2d 792, 842, 975 P.2d 967 (1999), *cert. denied*, 528 U.S. 922 (1999). The purpose of this rule is to ensure a fair and impartial trial under the Sixth and Fourteenth Amendments of the United States Constitution and article I, sections 3 and 22 of the Washington Constitution. *Id.* at 843 (explaining that shackling or handcuffing impinges upon the right to a fair trial because it violates the right to a presumption of innocence); *see Illinois v. Allen*, 397 U.S. 337, 344, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970) (shackling offends the dignity of the judicial process); *State v. Damon*, 144 Wn.2d 686, 691, 25 P.3d 418 (2001) (explaining that the jury may perceive that the accused is dangerous, and "one not to be trusted").

---

[1] In his pro se Statement of Personal Grounds, Mr. Montenguise makes two arguments that have no factual support in the record. Accordingly, we are in no position to review them. RAP 10.10.

3

This right is not absolute. *Finch*, 137 Wn.2d at 846. Restraints may be ordered for three purposes: "to prevent injury to those in the courtroom, to prevent disorderly conduct at trial, or to prevent an escape." *Id.* at 846. Additionally, the court's decision to use restraints may only be justified if based upon "specific facts relating to the individual" that are "founded upon a factual basis set forth in the record." *Id.* at 846; *see State v. Hartzog*, 96 Wn.2d 383, 399-400, 635 P.2d 694 (1981) ("a broad general policy of imposing physical restraints upon prison inmates charged with new offenses because they may be 'potentially dangerous' is a failure to exercise discretion").

In *Hartzog*, the Washington Supreme Court set forth several factors that a trial court could consider in deciding whether to use physical restraints:

> [T]he seriousness of the present charge against the defendant; defendant's temperament and character; his age and physical attributes; his past record; past escapes or attempted escapes, and evidence of a present plan to escape; threats to harm others or cause a disturbance; self-destructive tendencies; the risk of mob violence or of attempted revenge by others; the possibility of rescue by other offenders still at large; the size and mood of the audience; the nature and physical security of the courtroom; and the adequacy and availability of alternative remedies.

96 Wn.2d at 400 (quoting *State v. Tolley*, 290 N.C. 349, 368, 226 S.E.2d 353 (1976)).

*Finch* discussed how these factors should be applied, explaining that a trial court should only consider the factors that indicate a manifest need for security measures. 137 Wn.2d at 849. Even "the existence of one or more factors does not necessarily mean that a defendant should be restrained." *Id* at 850. The court emphasized that the need for

4

security must be compelling and that the trial court must base its decision on an "*imminent* risk of escape, that the defendant *intends* to injure someone in the courtroom, or that the defendant *cannot behave in an orderly manner* while in the courtroom." *Id.* (emphasis added). Finally, physical restraints should only be used as a "last resort" and the court must consider less restrictive alternatives before imposing them. *Id.* (citing *Allen*, 397 U.S. at 344).

On this record, we do not believe the facts supported the court's determination that restraints were justified. There was no indication that Mr. Montenguise was an escape risk or that he was not behaving properly in the courtroom. There also was no showing that he intended to injure anyone. Indeed, the court's observation was that he was not being disruptive or violent. Instead, the noted concerns were that the protected person would be in the courtroom, this was a domestic violence case, Mr. Montenguise had a history of not obeying court orders, and security was stretched thin.

The first three concerns, which are the only ones that appear to implicate *Finch* factors, do not support the use of restraints.[2] Although the protected person would be present and it was a domestic case, there was no indication that the relationship involved physical violence or that the defendant was likely to attack the victim. The two had been

---

[2] The fact that corrections staff is stretched thin is not a compelling reason to impose restraints, but it is a factor in identifying the amount of restraint necessary when the defendant is a demonstrated security risk.

5

living together and were turned in by an informant. The fact that the offense qualified as a "domestic violence" charge did not itself mean that there was a risk of violence as that concept is understood in the courthouse security context. All of the prior domestic violence convictions were for violating a no-contact order rather than instances of physical abuse.

The court also used those same convictions to express concern that Mr. Montenguise did not obey court orders. Although that is a reasonable inference from his criminal record, that same record does not show any conviction that indicates a flight risk or that his in-court behavior would not be exemplary.[3] More than a generalized refusal to obey court orders is necessary to establish that a security risk exists. A history of flight or repeated failures to appear is necessary, in the absence of some indication of current plans to escape, to meet the compelling security risk demanded by *Finch*. That is not the case here.

Accordingly, we conclude that the use of physical restraint was not justified in this case. However, this type of error can be harmless error. *State v. Damon*, 144 Wn.2d 686, 693, 25 P.3d 418 (2001). The State must show that "any reasonable jury would have reached the same result in the absence of the error." *State v. Guloy*, 104 Wn.2d 412, 425,

---

[3] The record also indicates Mr. Montenguise was in bench warrant status for two months in this case, although there is no indication that this involved flight rather than miscommunication.

705 P.2d 1182 (1985).[4] Washington courts have routinely found that, in situations where the shackles were not visible to the jury, the error was harmless. *State v. Hutchinson*, 135 Wn.2d 863, 888, 959 P.2d 1061 (1998); *State v. Monschke*, 133 Wn. App. 313, 336, 135 P.3d 966 (2006), *review denied*, 159 Wn.2d 1010 (2007); *State v. Jennings*, 111 Wn. App. 54, 61, 44 P.3d 1 (2002), *review denied*, 148 Wn.2d 1001 (2003).

That is the case here. The trial court described the restraints and indicated that the defendant's clothing and seating location prevented the jury from seeing the leg brace. The court also indicated the steps it would take to ensure that the defendant was not moved in the presence of the jury. The trial record does not indicate that any juror ever saw the restraints. At no time did counsel argue that the jury saw something it should not have seen.

Accordingly, the error was harmless beyond a reasonable doubt. The restraints went unseen and did not influence the outcome of the case.

Affirmed.

---

[4] The Supreme Court in *State v. Hutchinson* noted that it is the defendant's burden to show that the shackling had a substantial or injurious effect or influence on the jury's verdict. *State v. Hutchinson*, 135 Wn.2d 863, 888, 959 P.2d 1061 (1998); *see also State v. Jennings* explaining that case law is not clear regarding whether shackling in the courtroom creates a presumption of prejudice that the State must overcome or whether the defendant must demonstrate that the shackling was prejudicial. *State v. Jennings*, 111 Wn. App. 54, 61, 44 P.3d 1 (2002).

No. 33007-9-III
*State v. Montenguise*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Brown, A.C.J.

_____
Lawrence-Berrey, J.

8